## INDIANA BELL TELEPHONE COMPANY *v.* HAUFE.

### [No. 12,019.    Filed October 8, 1924.]

1. EVIDENCE.— *Hearsay Testimony.— Inadmissible.— Industrial Board.*—Hearsay testimony is inadmissible even before the Industrial Board, as the well-established rule is that a witness should not be allowed to give in evidence what some person has told him relevant to a fact in controversy.    p. 667.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.— Hearsay Testimony.*—Although the Industrial Board is not a court, it being merely an administrative body charged with the administration of the Workmen's Compensation Law, hearsay testimony should not be received, and an award of death benefits based wholly on such testimony will be reversed on appeal. p. 667.

From Industrial Board of Indiana.

Proceeding under the Workmen's Compensation Act by Frances Haufe against the Indiana Bell Telephone Company for an award of death benefits because of the

death of her son, Walter Haufe, an employee.   From an award for claimant, the defendant appeals.   *Reversed.*

*Samuel O. Pickens, R. F. Davidson, Owen Pickens* and *Smiley N. Chambers,* for appellant.

Frances Haufe (the appellee here) filed an application for an award of benefits on the ground that she was a dependent of one Walter Haufe, deceased; that while in the service of the telephone company, he received a personal injury by accident; and that his "death resulted from cancer of the esophagus, being the direct and proximate result of the injury."   The Industrial Board found that she was partially dependent on her son and made an award of benefits for 300 weeks at the rate of $2.75 per week.   The finding of facts includes the following:

"That sometime in the month of March or April of 1922, the said Walter Haufe received a personal injury by an accident arising out of and in the course of his employment; that said injury resulted in the death of said Walter Haufe on the 7th day of January, 1923."

The hearing before the full Board was on April 15, 1924.   The undisputed testimony establishes the following facts:   Walter Haufe died January 7, 1923.   On December 21, 1922, he went to the office of a surgeon who examined him.   The final diagnosis was a probable carcinoma of the esophagus.   He was unable to swallow food.   He complained of pain about the intercostal angle.   The pain at that time was intermittent but afterward became constant.   By the use of the X-Ray and bismuth, it was demonstrated that there was an opening through the wall of the esophagus and that his food passed through that opening into the thoracic cavity.   By a surgical operation, an artificial opening was made through the walls of the abdomen and stomach and a tube inserted, through which he could

be given nourishment.   The autopsy, performed by Dr. Warvel about an hour and a half after his death, disclosed that the rubber tube which had been inserted in his stomach had become loosened, had slipped through the wall of the stomach into the peritoneal cavity, and was lying free upon the left lobe of the liver; that he had cancer of the esophagus; that an ulcer had eaten through the wall of the esophagus, causing an opening therein about three centimeters in length and about one centimeter in width.   That opening appeared to have been due to the ulceration of a tubercular gland. Above the diaphram, there was another gland two and one-half by one and one-half by one centimeter, which had not ulcerated through but was enlarged.   There were other derangements which need not be detailed. The primary cause of death was peritonitis, due to leakage of the stomach contents through the artificial opening in the anterior wall of the stomach.   The secondary cause of death was ulceration of the esophagus at the bend of the aorta.   The cancer of the esophagus was at the left of the second rib.

Dr. Warvel testified that there was no relation between the blow alleged to have been received on the front of the abdominal cavity, below the lower edge of the ribs, in March or April, 1922, and the primary cause of death; that the cancer of the esophagus could not have been caused by such a blow and was not the result of such a blow.

Dr. Ricketts testified:

"I could not say the hit by the pole caused the cancer or I could not say it did not.   I do not think the hit by the pole caused the cancer.   I think the pre-disposition was there.   *   *   *   I do not wish to be understood as saying that the blow on the chest was the cause of the cancer.   I do not mean that.   If a gland was affected, then intrathoracic pressure might light up

some latent thing.   I do not say it did.   I do not believe anybody could say that; but I do not think they could say it didn't."

Frances Haufe, the appellee here and mother of the deceased workman, testified:

"During the year before Walter's death, he had not lived with me at any time nor I had not lived with him.   He said to me that he was struck in the chest with a pole, two inches or something above the stomach. He said the pole hit him a little above the stomach. He said he was injured in April or March of 1922. *   *   *   I asked him why he did not tell the company. But he never did."

Paul W. Haufe testified:

"I am a brother of Walter Haufe, the deceased.   I have knowledge of my brother receiving an injury in March or April, 1922.   I did not see him receive it.   I saw him right afterwards.   I have no personal knowledge by eyesight as to how he received the injury.   He said he was injured by a pole while he was loading poles in the Twenty-sixth street yards.   He said it was an awful bad, slippery day, and a pole bounced off the wagon or slipped some way and struck him across here, and I saw a day or so afterwards where there was a big black and blue spot right in here.   That is as far as my knowledge goes on that.   I did not see it.   As I understand, there were only two men present when it happened, and they were Mr. Udell and Mr. Russell. My brother worked at times off and on after the accident, on up until about October, when he took down to bed.   I could not say the date when he told me; it was about a week after the accident.

Oscar Born testified:

"I lived with Walter Haufe in the spring of 1922.   He came home from work and was telling me how he was hurt.   He asked me if I could do anything for him.

He showed me a black and blue spot. The spot was located, I judge, in the stomach, in the soft part of the abdomen. The spot was about the size of your hand, and was below the ribs. He said they were unloading poles from a wagon and, I believe, a pole fell and one end of the pole struck the ground, and from the vibration of the pole, it whipped back and struck him. He went back to work after receiving this alleged injury. He worked off and on, more or less. I do not know just how steady he worked, but he worked some after the accident but he always complained afterwards."

William C. Elliott testified:

"I knew Walter Haufe, the deceased, about 10 years. I lived with him but did not work with him. I occupied the same room with him; he and I slept together. He told me the evening he came home. He either said he was loading or unloading poles and one of the poles slipped and hit him somewhere in here. He showed me the bruise from this alleged injury. It was right where the ribs separate. He worked off and on after that."

William Russell testified:

"I knew Walter Haufe for about 18 months just prior to the alleged injury and death. I worked on the same job with him. I did not see him receive an injury, and have no personal knowledge of his receiving an injury except as was told me by Mr. Haufe himself. He never showed me any bruise on his body where he received the alleged injury. He pointed to it with his hand. I remember he pointed somewhere around here. He told me that the pole slipped and struck him somewhere around here. I could not say how long this was after the alleged injury was supposed to have happened. It may have been days and it may have been weeks. I could not say how long he worked after he claimed to

receive this injury. It must have been several weeks, I judge."

All the testimony concerning the statements said to have been made by Walter Haufe was admitted over the objections of the employer.

Dausman, J. (after making the foregoing statement) :

The controversy in this case involves two questions only, viz.: (1) Did the employee receive the alleged injury? (2) If so, did the injury cause his death? The contention is that there is no evidence to support the finding with respect to each of these two features. All the evidence that has any bearing on either feature is embodied in the preliminary statement.

It is clear that all the evidence relating to a personal injury alleged to have been received by the employee is of the kind commonly called hearsay. 22 C. J. 199; 10 R. C. L. 958. The general rule is that the courts will not receive the testimony of a witness as to what some other person told him as evidence of the existence of the fact asserted. For many years that rule has been firmly established and rigidly enforced.

In a recent case, the Supreme Court of the United States, speaking through Justice Pitney, said: "Hearsay evidence, with a few well-recognized exceptions, is excluded by courts that adhere to the principles of the common law. The chief grounds of its exclusion are, that the reported declaration (if in fact made) is made without the sanction of an oath, with no responsibility on the part of the declarant for error or falsification, without opportunity for the court, jury, or parties to observe the demeanor and temperament of the witness, and to search his motives and test his accuracy and veracity by cross-examination, these being most important safeguards of the truth, where a witness testifies

in person and as of his own knowledge; and, moreover, he who swears in court to the extrajudicial declaration does so (especially where the alleged declarant is dead) free from the embarrassment of present contradiction and with little or no langer of successful prosecution for perjury. It is commonly recognized that this double relaxation of the ordinary safeguards must very greatly multiply the probabilities of error, and that hearsay evidence is an unsafe reliance in a court of justice." *Donnelly* v. *United States* (1912), 228 U. S. 243, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E 710.

In an earlier case, the same court, speaking through Chief Justice Marshall, said: "It was very justly observed by a great judge that 'all questions upon the rules of evidence are of vast importance to all orders and degrees of men: our lives, our liberty, and our property are all concerned in the support of these rules, which have been matured by the wisdom of ages, and are now revered from their antiquity and the good sense in which they are founded.' One of these rules is, that 'hearsay' evidence is in its own nature inadmissible. That this species of testimony supposes some better testimony which might be adduced in the particular case, is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible. * * * If the circumstance that the eye witnesses of any fact be dead should justify the introduction of testimony to establish that fact from hearsay, no man could feel safe in any property, a claim to which might be supported by proofs so easily obtained." *Queen* v. *Hepburn* (1813), 7 Cranch. 290, 3 L. Ed. 348.

The rule against hearsay has always prevailed in Indiana. *Fuller* v. *Wilson* (1843), 6 Blackf. 403; *Mor-*

*rell* v. *Morrell* (1901), 157 Ind. 179. The hearsay testimony in the case at bar does not come within any of the exceptions to the general rule and it cannot be accepted for any purpose. It is true that the Industrial Board is not a court. It is an administrative body, charged with the administration of the Workmen's Compensation Law. Upon it rests the duty and the responsibility of determining, within its special jurisdiction, the rights of men, women and children. If those rights were suffered to depend on hearsay, no one would be secure. *Haskell, etc., Car Co.* v. *Brown* (1917), 67 Ind. App. 178. Since no legitimate evidence has been adduced to prove that the employee received an injury arising out of and in the course of his employment, the award cannot stand.

The other features involved in this controversy need not be discussed.

The award is reversed.