ASBESTOS INSULATING & ROOFING COMPANY, INC. *v.* SCHROCK ET AL.

[No. 17,180. Filed November 19, 1943.]

*Henry L. Humrichouser,* of South Bend, for appellant.

*Samuel C. Cleland,* of Fort Wayne, for appellees.

FLANAGAN, J.—On January 10, 1940, John F. Schrock died as the result of an automobile accident which occurred on January 8, 1940, about five or six miles east

of Huntington, Indiana, on U. S. Road No. 24. The Industrial Board awarded compensation to his widow and children, the appellees herein, against appellant.

The questions here presented are, (1) the competency of certain testimony, and (2) the sufficiency of the evidence to sustain the finding of the board that the decedent was in the employment of appellant at the time of the injury which resulted in his death.

The evidence most favorable to appellees, omitting the testimony, the competency of which is in dispute, discloses the following facts:

Appellant was in the roofing and insulating business, with its office in Fort Wayne, Indiana. J. G. Warren was president of the company and had charge of the insulating department. Edward Granlund was vice president of the company and had charge of the roofing department. William Miller was a salesman of house insulation. The decedent was employed by the company, whenever it had such work to do, to blow the insulating material into the buildings from a blowing machine owned by him and kept on a trailer owned by appellant. For this work he was paid by the cubic yard of insulation installed, and in addition was paid for the use of his truck in hauling the material to the job. Sometimes he assisted Miller in measuring and figuring insulation jobs and occasionally worked on roofing jobs.

On the morning of January 8, 1940, the decedent had no work to do, but as was his custom, drove his truck to the office of appellant. Granlund, on instruction from Warren, had arranged to go to Huntington, Indiana, on that day in response to an inquiry from a Huntington creamery concerning insulation. About noon the decedent drove home and about the time he arrived there Miller and Granlund each drove up in

their respective automobiles. The decedent went into the house, got his shot gun and some shells, his ruler and the note book in which he figured insulation jobs, and all three drove away in Granlund's car. The deceased had on work clothes, and Miller and Granlund had on business suits. Between 7:00 and 7:45 o'clock that evening, while the car in which the deceased was riding was headed toward Fort Wayne, on a road which was the direct route between Huntington and Fort Wayne, the accident which resulted in decedent's death occurred. Miller and Granlund were killed immediately and the deceased died two days later without having regained consciousness. Miller had his shot gun along but an examination of it and the one belonging to the decedent showed that neither had been fired.

In addition to the above evidence there was testimony by decedent's widow and daughter that he told them on the morning the accident occurred that he was going to Huntington to measure a creamery and might do a little hunting on the way back. This evidence was admitted over appellant's objection and its competency is here challenged. We agree with appellant that it is pure hearsay, is incompetent, should not have been admitted, and cannot be considered for any purpose. *Hege & Co.* v. *Tompkins* (1919), 69 Ind. App. 273, 121 N. E. 677; *Indiana Bell Telephone Co.* v. *Haufe* (1924), 81 Ind. App. 660, 144 N. E. 844; *G. W. Opell Co.* v. *Phillips* (1929), 90 Ind. App. 552, 169 N. E. 354.

Appellees insist that the cases of *Columbian Enameling, etc., Co.* v. *Cramer* (1927), 86 Ind. App. 164, 156 N. E. 467; *Red Cab, Inc.* v. *Ziegner* (1941), 108 Ind. App. 607, 29 N. E. (2d) 330; and *White Swan Laundry* v. *Muzolf* (1942), 111 Ind. App. 691, 42 N. E. (2d) 391, support a contrary rule. We

do not agree that they do. The first two cases involve reports of an accident by the injured employee to the employer where the employer had all sources of information at hand when the report of the accident was made, and ample opportunity to investigate and satisfy himself of the facts. Such instances constitute an established exception to the hearsay rule. The White Swan Laundry case reaffirms the hearsay rule but correctly holds that if an award of the Industrial Board is supported by competent evidence it will not be reversed because of the admittance of incompetent evidence. The fact that an award will not be reversed because of the admission of incompetent evidence does not mean that such improperly admitted evidence can be given any consideration, and the White Swan Laundry case is not to be construed as so holding.

Is there competent evidence to support the finding of the board that the deceased was in the course of his employment with appellant at the time of the accident? We think not.

There is no evidence as to the whereabouts of the deceased from the time he left his home in Granlund's car until the time of the accident. There is no evidence that either he or Miller were directed to do anything concerning the inquiry from the Huntington creamery. There is no evidence that Granlund had any authority to employ the deceased to assist in any work he had been directed to do at Huntington. The mere fact that he had the title of vice president does not evidence such authority. 19 C. J. S., § 753, p. 98, § 1101, p. 468; 13 Am. Jur., § 907, p. 883. He was not at the time engaged in the usual scope of his employment in managing the roofing department.

We think appellees correctly stated in their brief that, "The crux of the controversy before this court

arises essentially out of the admission of evidence which would ordinarily fall within the realm of hearsay." It seems apparent that the board's finding is based upon the incompetent evidence hereinabove discussed.

Award reversed with instructions to grant appellant a rehearing.

NOTE.—Reported in 51 N. E. (2d) 395.