354 N.E.2d 324 (1976)
C.T.S. CORPORATION, Defendant-Appellant,
v.
Philip SCHOULTON, Administrator of the Estate of Manley J. Robinson, Sr., Deceased, Plaintiff-Appellee.
No. 2-774A178.
Court of Appeals of Indiana, Second District.
September 13, 1976.
Rehearing Denied October 7, 1976.
*325 Arthur A. May, Crumpacker, May, Levy & Searer, South Bend, for defendant-appellant.
Frank J. Petsche, David L. Matthews & Associates, South Bend, for plaintiff-appellee.
SULLIVAN, Judge.
C.T.S. Corporation (Employer) appeals from an award by 4-2 vote of the Full Industrial Board granting workman's compensation hospitalization, medical, funeral and death benefits to the estate of Manley J. Robinson (Employee).
Employee died of acute liver and kidney failure which the Board found to be occasioned by inhalation of toxic fumes. The question before us is whether there was sufficient evidence of record to establish that the inhalation of toxic fumes was sustained in the course and scope of employment. More particularly Employer takes issue with the Board's consideration of hearsay evidence which established the causal connection.
There is undisputed evidence that trichloroethylene, a degreasing cleaning agent, was used by employees for many purposes in Employer's plant. Despite some discrepancy in terminology,[1] the cleaning agent used in the plant had toxic properties.
The Employee's treating physician saw Employee at a truck stop in Jones, Michigan on October 16 or 17, 1970 after Employee had complained of nausea, vomiting and general weakness. The condition worsened and Employee was hospitalized on October 19 with nausea, vomiting and distended stomach, enlarged liver and low urine output. On October 24, he died as a result of kidney and liver failure.
Employee had a medical history of alcoholism and a liver condition, i.e., infectious hepatitis. An autopsy, however, disclosed that the liver was not cirrhotic and it was concluded by the pathologist that neither cirrhosis nor alcoholism caused the liver and kidney failure. It was the medical opinion of Employee's treating physician and a consulting physician that *326 Employee died from the toxic effect of massive inhalation of cleaning solvent occasioned when a full drum or bucket of the solvent spilled on the floor at Employer's plant.
The only evidence that there was, in fact, such an occurrence came via hearsay evidence. Employee's treating physician testified that he was asked by Employee's sister-in-law, during Employee's hospitalization, whether his condition could have been caused by exposure to "carbon tetrachloride".[1] The inquiry prompted the physician to question Employee directly, who, in response, stated that "he had tripped over a barrel or bucket of cleaning solvent and that it spilled all over the floor and that he got down and cleaned it up".
Employee's representative takes the inferential position that such hearsay was properly considered by the Full Board and that in light of the surrounding circumstances, i.e., the availability and frequent use of the cleaning agent by employees, including the decedent here, such evidence is sufficient to support the award.
Employer concedes that a "medical history", even though hearsay, might form the basis of a medical opinion but correctly asserts that prior case law has held that such "history" may not be used as proof of the fact or facts contained in the history given by the patient, nor may such be considered as basis for an award. City of Anderson v. Borton (1962), 132 Ind. App. 684, 178 N.E.2d 904. It is not disputed by Employee's representative that the conclusions of the medical experts regarding the industrial spilling occurrence as the cause of toxic inhalation and the consequent kidney and liver failure, were based principally, if not entirely, upon the statement made by decedent to his treating physician.
We do not perceive the determinative issue clearly to be that posed by C.T.S., i.e., whether hearsay statements may be considered by the Board as evidence to establish that Robinson's death was due to an industrial accident. Rather, we view the issue to be whether such causal relationship may be established solely by such hearsay.
In an early case, McCoy v. General Glass Corp. (1938), 106 Ind. App. 116, 17 N.E.2d 473, it was held reversible error to admit a coroner's verdict as to cause of death in a Workman's Compensation claim. It further held reversible error in the admission of testimony as to cause of death when that opinion was premised upon hearsay information which the physician obtained in his investigation as coroner. This principle, as to establishment of cause of death, was reaffirmed in Indiana Steel Products Co. v. Leonard (1956), 126 Ind. App. 669, 131 N.E.2d 162. See also generally, Indiana Bell Telephone Co. v. Haufe (1924), 81 Ind. App. 660, 144 N.E. 844.
In the recent past, we have upheld the exclusion of such hearsay evidence notwithstanding acknowledgment that the strict rules of evidence do not apply to workman's compensation proceedings.[2]Robinson v. Twigg Industries, Inc. (2nd Dist. 1972), 154 Ind. App. 339, 289 N.E.2d 733. Compare with Lewis v. Review Board (2nd Dist. 1972), 152 Ind. App. 187, 282 N.E.2d 876 and Red Cab Inc. v. Ziegner (1940), 108 Ind. App. 607, 29 N.E.2d 330.
A somewhat more relaxed rule is evidenced by a line of cases represented by City of Anderson v. Borton, supra, and White Swan Laundry v. Muzolf (1942), *327 111 Ind. App. 691, 42 N.E.2d 391, which held that admission of hearsay of the nature rejected in McCoy, supra, while not cause for reversal, could nevertheless not form the basis of an Industrial Board award unless corroborated. But see Asbestos Insulating & Roofing Co. v. Schrock (1943), 114 Ind. App. 177, 51 N.E.2d 395 (overruled by American Security Co. v. Minard (1948), 118 Ind. App. 310, 77 N.E.2d 762). And more recently, in Bohn Aluminum & Brass Co. v. Kinney (2nd Dist. 1974), Ind. App., 314 N.E.2d 780, we affirmed the Board's exclusion of hearsay although we indicated that had the Board admitted such evidence, we might not have been compelled to reverse the award. See 314 N.E.2d at 786.
In a civil case, American United Life Insurance Co. v. Peffley (2nd Dist. 1973), Ind. App., 301 N.E.2d 651, a majority of this District recognized that hearsay not falling within a traditionally recognized exception might nevertheless be considered as having probative value if there were shown "a circumstantial probability of trustworthiness, and a necessity, for the evidence". V Wigmore, Evidence § 1420 (Chadbourn rev. 1974) at p. 251.[3]
The evidence in controversy here bears both such attributes. Its necessity is obvious, for the declarant is deceased. V Wigmore, supra, § 1421. Its trustworthy characteristic is demonstrated by the fact that the decedent's statement was not volunteered but was given only in response to direct inquiry by his treating physician. The original source of the physician's information from decedent's sister-in-law does not reflect adversely upon the trustworthiness since she would have no ulterior motive or interest in the industrial workmen's compensation aspect of such information as conveyed to the physician.
The testimony here is thus different as to demonstration of trustworthiness than the testimony rejected in Robinson v. Twigg Industries, Inc., supra and Bohn Aluminum Brass Co. v. Kinney, supra (Workmen's Compensation cases) and is patently different as to necessity from that evidence rejected in Gold Bond Building Products Division v. Review Board (2nd Dist. 1976) Ind. App., 349 N.E.2d 258 (an unemployment security benefit case). We do not, however, end our consideration of this appeal upon the premise that it was not improper for the Board to consider such hearsay evidence. We must turn to the question we deem determinative, i.e., whether an award may be premised entirely upon hearsay. We answer the latter question in the affirmative.
A majority of the jurisdictions which have confronted the question appear to adopt what is termed the "residuum rule" or a counterpart thereof. Anno. 36 A.L.R. 3d 12.
The landmark case which originated the "residuum rule" is Carroll v. Knickerbocker Ice Co. (1916), 218 N.Y. 435, 440, 113 N.E. 507, 509, in which the court concluded that the New York statute:
"... may be taken to mean that while the Commission's inquiry is not limited by the common law or statutory rules of evidence or by technical or formal rules of procedure, and it may, in its discretion, accept any evidence that is *328 offered, still in the end there must be a residuum of legal evidence to support the claim before an award can be made."
A salient observation was made, however, by the annotator in 36 A.L.R.3d 12 at 93-94:
"In Altschuller v. Bressler (1943) 289 NY 463, 46 N.E.2d 886, the Court of Appeals observed that the rule formulated in Carroll v. Knickerbocker Ice Co., text above, has been criticized by many scholars as the product of judicial reluctance to depart from long-accepted but technical common-law rules and concepts, and that the dissenting opinion (of Seabury, J.) has received correspondingly warm approval, but that nonetheless, the Court of Appeals has never overruled the Carroll Case, nor has the legislature amended the statute in a manner which would permit the trier of the facts to give greater probative force to `hearsay' evidence."
In any event, New York courts, since amendment of their Workmen's Compensation statute in 1922, have held that:
"... declarations of an employee, since deceased, concerning the accident support an award favorable to the claimant where the hearsay evidence as to the declarations of the deceased employee is corroborated by facts, circumstances, or other evidence." Anno.: 36 A.L.R. 3d 12 at 94, and cases there cited.
Thus, the "residuum rule" appears to have been eroded even in the state of its birth. And even in New York, the hearsay involved here, when coupled with facts and circumstances substantially as they exist in our case, would support an award. Carney v. General Cable Corp. (1952), 303 N.Y. 885, 105 N.E.2d 108.
Professor Davis in his Administrative Law Treatise has written eloquently and exhaustively in criticism of the "residuum rule". 2 Davis, Administrative Law § 14.10 (1958).
He wrote, in part, as follows:
"The residuum rule requires a reviewing court to set aside an administrative finding unless the finding is supported by evidence which would be admissible in a jury trial. Even though the jury-trial rules of evidence have been tailored to the peculiar needs of juries, the residuum rule requires the use of those rules in cases in which no jury sits. And even though the jury-trial rules have been designed to guide admission or exclusion of evidence, not evaluation of evidence, the residuum rule requires use of those rules for evaluation of evidence. Under the residuum rule a finding which is unsupported by evidence which would be admissible in a jury trial mut be set aside, no matter how reliable the evidence may appear to the agency and to the reviewing court, no matter what the circumstantial setting may be, no matter what may be the evidence or lack of evidence on the other side, and no matter what may be the consequences of refusing to rely upon the evidence.
* * * * * *
"The first and most important step in understanding the residuum rule  a step that too many courts have failed to take  is to recognize what is and what is not the alternative to the residuum rule. The alternative is to allow agencies and reviewing courts to exercise discretion in determining in the light of circumstances of each case whether or not particular evidence is reliable even though it would be excluded in a jury case. In the exercise of such discretion, agencies and reviewing courts will in many circumstances find that particular hearsay or other so-called incompetent evidence has insufficient reliability. Rejection of the residuum rule does not mean that an agency is compelled to rely upon incompetent evidence; it means only that the agency and the reviewing court are free to rely upon the evidence if in the circumstances they believe that the evidence *329 should be relied upon. Rejection of the residuum rule does not mean that a reviewing court must refuse to set aside a finding based upon incompetent evidence; it means only that the court may set aside the finding or refuse to do so as it sees fit, in accordance with its own determination of the question whether the evidence supporting the finding should be deemed reliable and substantial in the circumstances.
"The residuum rule is predicated upon the assumption that an abstract determination that incompetent evidence may never support a finding is superior to concrete determinations in particular cases of the question whether particular incompetent evidence may in all the circumstances of the case be deemed sufficient to support the particular finding.
"As soon as the residuum rule and the alternative to the rule are understood, the reasons against the rule become overwhelming  so overwhelming as to give rise to the question whether courts that have given lip service to the residuum rule have done so on the basis of misunderstanding instead of through an exercise of informed judgment." 2 Davis § 14.10 at 291-93.
We are aware of cases which require corroboration before hearsay testimony may be held to support an award. See Anno.: 36 A.L.R.3d 12 § 27 at 89 et seq.
We note some unfortunate overlapping as to "corroboration" vis a vis "residuum". Corroboration is nothing more than demonstration that the challenged hearsay is "trustworthy". Residuum on the other hand would appear to require independent establishment of the fact which the trustworthy hearsay evidence establishes  a redundancy at best!
As Professor Davis noted, rejection of the residuum rule or a corroboration rule does not mean that an administrative fact-finder is compelled to rely upon incompetent evidence. Certainly, a hearing member or the full board should not consider rank unreliable hearsay as having probative value. But if circumstances exist so as to establish the probable truth and veracity of the hearsay statement, that trustworthy evidence should have attached to it, such probative value as those circumstances warrant. Thus, if the administrative agency has, by basing its finding of fact upon hearsay, determined it to be trustworthy and necessary, and if such assessment passes appellate muster, the corroborative test has been met. Corroboration is therefore directed toward those circumstances which give to the hearsay its trustworthy characteristic as opposed to independent evidence which supports the fact which the hearsay tends to establish. Were it otherwise, the "corroboration rule" would be but a restatement of the "residuum rule", requiring independent competent evidence.
The administrative agency, when making its factual determination, must consider or disregard hearsay evidence only after first determining the reliability  the trustworthiness  and necessity of that evidence. Having admitted such evidence, if upon appellate review it retains sufficient trustworthy and necessitous credentials, so as to give it probative value, it may support the award without corroboration or without a residuum of "competent" evidence. See Warren v. Indiana Telephone Co. (1940) 217 Ind. 93, 26 N.E.2d 399. If untrustworthy or unnecessary the hearsay should be disregarded by the fact finder. But if trustworthy and necessary, it should not be treated as an evidentiary step-child. It should be accepted and recognized as having the probative value sufficient to support an award.
The Arizona Supreme Court has stated it thusly:
"Much hearsay is worthless rumor or gossip, but there is also such a thing as `persuasive hearsay' and the fact-finding *330 commission may be given credit for the ability to distinguish the one from the other... .
* * * * * *
"The rule which we restate does not authorize the unrestricted use of all types of tale bearing as the exclusive basis for an award... .
"The objective of the New York court in Carroll was to prevent awards based on insubstantial evidence. We believe that this objective can be better achieved by upholding awards based on evidence that is technically hearsay, but of the persuasive type, rather than on the mechanical requirement that there must be a residuum of `legal evidence' somewhere in the record. Professor Larson phrases the preferable rule permitting hearsay evidence alone to support an award with the qualification that `in all the circumstances, the hearsay evidence is of a character to satisfy a reasonable mind'. 2 Larson [Workmen's Compensation Law] § 79.22. And it is in this form that we adopt it." Reynolds Metals Co. v. Industrial Commission (1965), 98 Ariz. 97, 102-103, 402 P.2d 414, 417, 418.
In summary, we note that in view of the circumstances under which decedent's statement concerning the spilling of the cleaning agent was made to the physician, it bore the requisite assurance of truth and veracity and was properly considered. In light of the evidence that the cleaning agent was readily available to employees in the plant and in light of the medical evidence that the condition of decedent's liver and kidneys pointed toward inhalation of toxic fumes as the cause of his illness and death, we deem such to provide circumstantial corroboration, not that the spilling incident took place, for we have held such corroboration to be unnecessary, but rather, that the hearsay evidence was trustworthy and credible, and thus, of sufficient probative value upon which to base an award.
The award is affirmed.
WHITE, J., concurs.
BUCHANAN, P.J., dissents with separate opinion.
BUCHANAN, Presiding Judge (dissenting).
I respectfully, but emphatically, dissent for these reasons:
1. The majority generously bestows upon an administrative agency the unrestricted right to ignore the Hearsay Rule ... a right which is denied the trial court and the jury as fact-finders.
2. By its holding the majority has overruled cases of this Court too numerous to cite[1] which have long embraced the principle that objected to hearsay testimony is not competent and probative evidence. As Judge Sullivan unequivocably recognized in Robinson v. Twigg Industries, Inc. (1972), 154 Ind. App. 339, 344, 289 N.E.2d 733, 736:
The rule against hearsay testimony prevails in Indiana administrative hearings as well as in courts of law. White Swan Laundry v. Muzolf (1942), 111 *331 Ind. App. 691, 42 N.E.2d 391; National Malleable, etc., Co. v. Holliday (1932), 94 Ind. App. 34, 179 N.E. 571; Columbian Enameling etc. Co. v. Cramer, (1927), 86 Ind. App. 164, 156 N.E. 467.
3. Having rejected in its entirety the Hearsay Rule, and its exceptions, in Workmen's Compensation proceedceedings on no other authority than one commentator and one Arizona case,[2] the majority proceeds to adopt a subjective standard so vague that it amounts to no standard whatsoever.
If, after receiving any and all hearsay in evidence, the Industrial Board decides it is "trustworthy and necessary", it may treat the evidence as both competent and probative. The administrative fact-finder may thus sift out the "persuasive" hearsay ... a process forbidden to trial courts and juries. In this manner the Board could send out its own investigator to interview all the witnesses involved and proceed to hear his report as to the hearsay facts so garnered, and judge it to be persuasive, probative hearsay.
4. The adoption of a Trustworthy and Necessary rule puts reviewing courts in the position of weighing the evidence if the rationale of Professor Davis' approach is carried to its logigal conclusion. In fact he says, "... it means only that the court [the reviewing court] may set aside the finding or refuse to do so as it sees fit, in accordance with its own determination of the question whether the evidence supporting the finding should be deemed reliable and substantial in the circumstances." See 2 Davis, Administrative Law § 14.10 (1958). The process of analyzing and post-analyzing what evidence is probative as being trustworthy and necessary under the circumstances can only be characterized as weighing and judging credibility of the evidence ... a task from which appellate courts in this country instinctively shrink.
5. A change as important as total elimination of the Hearsay Rule in Workmen's Compensation proceedings should be initiated by the Indiana Supreme Court.
6. This case possibly could be disposed of under an established exception to the Hearsay Rule for statements made to a treating physician concerning the cause or external source of an illness or condition made for the purpose of diagnosis and treatment.

See McCormick, Evidence § 292, at 691 (1972); 6 Wigmore on Evidence §§ 1718-1723 (1976); Annot., 37 ALR 3d 778 (1971); Federal Rules of Evidence, Rule 803(4); 4 Weinstein, Weinstein's Evidence, Rule 803(4), Advisory Committee's Note on Rule 803, Exception 4, at 803-36 and Rule 803 (4)[01], at 803-121.
When Oliver Wendell Holmes said, "The life of the law has not been logic: it has been experience," he could well have been referring to the Hearsay Rule and its exceptions. The accumulated experience of mankind has been reflected in the common law rule that with certain well established exceptions, hearsay is unreliable and not competent evidence on which to base a decision or judgment. See 5 Wigmore on Evidence § 1364 (1974); McCormick, Evidence § 244 (1972).
In the never-ending search for truth, this famous rule has been invoked so many times that the might of its rationale has been obscured.
*332 Whether the fact-finder be a trial court, administrative agency, or a jury, the principle is the same ... (1) the out-of-court declarant is ordinarily not under oath when he makes the assertion; (2) the trier of fact is deprived of the opportunity to observe the declarant's demeanor and judge his credibility as the assertion is made; (3) the possibility of fraud or inaccuracy is great; and (4) the opposing party is denied the opportunity to cross-examine the out-of-court declarant on the truth of his assertion. See 5 Wigmore on Evidence § 1362 (1974); McCormick, Evidence § 245 (1972).
The Residuum Rule is a logical development of the Hearsay Rule. Although the majority is correct that the Residuum Rule originated in the New York case of Carroll v. Knickerbocker Ice Co., 218 N.Y. 435, 113 N.E. 507 (1916), it spread rapidly and is now accepted in varying degrees by at least twenty-one (21) other jurisdictions. See Annot., 36 A.L.R.3d 12 (1971).
Indiana courts have unerringly applied a modified version of the Residuum Rule. It is improper (albeit not reversible error) for the Industrial Board to admit incompetent hearsay and an award must be supported by some competent evidence presented at the hearing.
See generally Bohn Aluminum & Brass Co. v. Kinney (1974), Ind. App., 314 N.E.2d 780; Robinson v. Twigg Industries, Inc. (1972), 154 Ind. App. 339, 289 N.E.2d 733; Asbestos Insulating & Roofing Co. v. Schrock (1943), 114 Ind. App. 177, 51 N.E.2d 395, overruled by American Security Co. v. Minard (1948), 118 Ind. App. 310, 77 N.E.2d 762; City of Anderson v. Borton (1962), 132 Ind. App. 684, 178 N.E.2d 904; White Swan Laundry v. Muzolf (1942), 111 Ind. App. 691, 42 N.E.2d 391; McCoy v. General Glass Corp. (1938), 106 Ind. App. 116, 17 N.E.2d 473; National Malleable & Casting Co. v. Holliday (1932), 94 Ind. App. 34, 179 N.E. 571; G.W. Opell Co. v. Phillips (1929), 90 Ind. App. 552, 169 N.E. 354; Bell Telephone Co. v. Haufe (1924), 81 Ind. App. 660, 144 N.E. 844; Small, Workmen's Compensation Law of Indiana § 12.6, 388-89 (1950).
While I experience some discomfort with the breadth of the Residuum Rule as it exists in other jurisdictions, this is not cause to reject entirely the modified version developed in Indiana as the majority has done.
As the law now exists in Indiana, administrative agencies such as the Industrial Board exercise a quasi-judicial function and, although not as strictly as courts of law, are subject to the operation of the Hearsay Rule. See cases cited supra.
In eradicating the Hearsay Rule, the majority does not take account of the considerable leeway presently allowed the Board with respect to hearsay. The Board can admit all hearsay evidence without fear of automatic reversal. If properly objected to at the hearing and preserved on review and not falling within a recognized exception to the Hearsay Rule, then an award may not be based solely upon such hearsay. But if not objected to, the hearsay (incompetent evidence) may form the basis for an award.
See Bohn Aluminum & Brass Co. v. Kinney, supra; Hinshaw v. Waddell (1957), 128 Ind. App. 67, 142 N.E.2d 640; Page v. Board of Commissioners of County of Clay (1973), Ind. App., 292 N.E.2d 254; Hege & Co. v. Tompkins (1918), 69 Ind. App. 273, 121 N.E. 677; Indiana Bell Telepone Co. v. Haufe, supra.
See also: Annot., 36 A.L.R.3d 12, § 2(b), 30-31 (1971); 2 Am.Jur.2d Administrative Law § 425 (1962).
As we said about three years ago in Page v. Board of Commissioners of County of Clay, supra:
Incompetent evidence then may support a workmen's compensation award of benefits if the claimant fails to object to the incompetent evidence. Such waiver *333 is in keeping with established practice in trial courts where evidentiary rules are even more strict. Hinshaw v. Waddell, 128 Ind. App. 67, 142 N.E.2d 640, supra, follows established practice in the trial courts and we see no logic or authority dictating a change for administrative agencies.
292 N.E.2d at 258.
The Indiana modification of the Residuum Rule is undeserving of a dust bin in history ... because it sets out a rational outer limit on how far an administrative agency can go in basing its decisions on unreliable evidence.
NOTES
[1] Employee habitually referred to trichloroethylene as carbon tetrachloride which had been the cleaning agent previously used in the plant.
[2] Indiana Administrative Rules and Regulations (40-1510)-1 (Burns 1976 ed.) provides: "The industrial board will not be bound by the usual common law or statutory rules of pleading and evidence, or by any technical rules of practice in conducting hearings, but will conduct such hearings and make such investigations in reference to the questions at issue in such manner as in its judgment are best adapted to ascertain and determine expeditiously and accurately the substantial rights of the parties and to carry out justly the spirit of `The Indiana Workmen's Compensation Act'... ."
[3] The "trustworthiness-necessity" test has been succinctly stated in 2 Jones on Evidence § 8.9 at 179 (6th Ed. 1972): "The hearsay exclusionary rule is distinguishd by its many exceptions, so much so in fact that the exceptions have been said to have virtually swallowed the rule. The relaxations of the rule, reflected in the stated exceptions, have come about by the case by case need for reliance on some types of hearsay having probative value, in the interest of essential justice.

While necessity has provided the need for an exception, where without it for want of better evidence justice would fail, the courts have found it necessary to search for additional justification in the form of circumstantial assurance that the out-of-court statement was probably a correct statement of the facts. This circumstantial `guaranty' of trustworthiness is said to stand as an acceptable equivalent, or better, to cross-examination of the declarant."
[1] For example, see: Bohn Aluminum & Brass Co. v. Kinney (1974), Ind. App., 314 N.E.2d 780; Robinson v. Twigg Industries, Inc. (1972), 154 Ind. App. 339, 289 N.E.2d 733; Asbestos Insulating & Roofing Co. v. Schrock (1943), 114 Ind. App. 177, 51 N.E.2d 395, overruled by American Security Co. v. Minard (1948), 118 Ind. App. 310, 77 N.E.2d 762; City of Anderson v. Borton (1962), 132 Ind. App. 684, 178 N.E.2d 904; White Swan Laundry v. Muzolf (1942), 111 Ind. App. 691, 42 N.E.2d 391; McCoy v. General Glass Corp. (1938), 106 Ind. App. 116, 17 N.E.2d 473; National Malleable & Casting Co. v. Holliday (1932), 94 Ind. App. 34, 179 N.E. 571; G.W. Opell Co. v. Phillips (1929), 90 Ind. App. 552, 169 N.E. 354; Bell Telephone Co. v. Haufe (1924), 81 Ind. App. 660, 144 N.E. 844; Small, Workmen's Compensation Law of Indiana § 12.6, 388-89 (1950).
[2] 2 Davis, Administrative Law § 14.10 (1958) and Reynolds Metal Co. v. Industrial Commission, 98 Ariz. 97, 402 P.2d 414 (1965).