ORA DeETTE BERGAN, OSCAR BERGAN, Fatale, Claimant and Appellant, v. GALLATIN VALLEY MILLING COMPANY, and AETNA CASUALTY & SURETY COMPANY, Defendants and Respondents.

No. 10075.
Submitted January 15, 1960. Decided May 6, 1960.
Rehearing denied July 26, 1960.
353 P.2d 320.

George Niewoehner, White Sulphur Springs, argued orally for appellant.

William L. Baillie and Jardine, Stephenson, Blewett & Weaver, Great Falls, William L. Baillie argued orally for respondent.

HONORABLE GUY C. DERRY, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, delivered the Opinion of the Court.

Ora DeEtte Bergan, widow of Oscar Bergan, has prosecuted an appeal to this court from the judgment of the district court

of the eighteenth judicial district, denying her claim for compensation based on the death of her husband, which she alleges occurred as a result of an industrial accident. Hereafter, appellant is referred to as claimant, and the two respondents are referred to as defendants.

The compensation claim was first heard before George Wood, hearings officer for the Industrial Accident Board, on February 26, 1958. The hearing was continued to August 12, 1958, at which time further testimony was taken, and the cause was deemed submitted and taken under advisement. Subsequently the hearings officer made findings of fact and conclusions of law and these were adopted by the Board. In substance, the Board found that claimant alleged that her husband died as a result of accidents arising out of and in the course of his employment on or before December 15, 1956, and January 2, 1957, and that at the time of his alleged injury, his employer was enrolled under Plan II of the Workmen's Compensation Act of Montana, and the insurance carrier was Aetna Casualty & Surety Company, defendant herein; that at the time of the alleged injury and at the time of his death, he was married to claimant and had no minor children under 18; that as of the time of his death, his average weekly wage was $55.38; that Oscar Bergan died on March 13, 1957, of coronary heart disease; that Oscar Bergan failed to give timely notice of injury to his employer; that claimant herein filed a timely claim for compensation with the Industrial Accident Board; that the facts are insufficient to support claimant's allegation that Oscar Bergan suffered accidents arising out of and in the course of his employment by Gallatin Valley Milling Company, on or about December 15, 1956, and January 2, 1957; that the facts are insufficient to support claimant's allegation of causal relationship between the alleged injuries on December 15, 1956, and January 2, 1957, and Oscar Bergan's death.

As its conclusions of law, the Board found that Oscar Bergan did not suffer an industrial accident on December 15, 1956,

or on January 2, 1957, while in the employ of the Gallatin Valley Milling Company; that he failed to give timely notice of his alleged accidental injuries of December 15, 1956, and January 2, 1957, as provided for in section 92-807, R.C.M. 1947; that there was no causal relationship between Oscar Bergan's death and the alleged accidental injuries of December 15, 1956, and January 2, 1957; that by reason of the fact that Oscar Bergan did not suffer an industrial accident within the meaning of the Workmen's Compensation Act, and by reason of the fact that Oscar Bergan failed to give timely notice of his alleged injuries, and by reason of the fact that no causal relationship exists between the alleged injuries, and Oscar Bergan's death, claimant's claim for compensation may not be maintained.

Claimant appealed from the decision of the Board to the district court for Gallatin County. By the minutes of the court of November 13, 1958, it is made to appear that the appeal was heard in the district court solely upon the record made in the hearing before the examiner. Subsequently, the trial court made and entered its findings of fact and conclusions of law substantially as stated in the findings made by the Board, but with this additional conclusion of law, to-wit: "That there was no direct evidence presented of any accident or accidents since hearsay testimony standing alone is not adequate evidence before the Industrial Accident Board to establish claimant's case by the necessary preponderance of evidence."

By her specifications of error, claimant contends that the Board, in the first instance, and the trial court in the second, was in error in holding that decedent failed to give timely notice of injury to his employer and that such failure is a bar to proceedings; that the Board and the court erred in its finding that Oscar Bergan did not sustain an industrial accident as alleged and that the accidents did not cause, aggravate or accelerate the heart condition from which he died, and in dismissing the claim of the widow; that the district court erred

in making and entering its conclusions of law concluding that the hearsay testimony introduced on behalf of claimant stood alone and that said testimony was not adequate, and thereby impliedly concluding the admission of such testimony by the Industrial Accident Board was subject to review.

There is some confusion in the record made before the Board and which was subsequently reviewed by the trial court. As found by the trial court, the evidence offered by the claimant was entirely hearsay. While this court has held that testimony, based on hearsay, may be accepted or rejected in the discretion of the Board (Ross v. Industrial Accident Board, 106 Mont. 486, 495, 80 P.2d 362) this court has repeatedly said that the weight to be given to the testimony of witnesses is exclusively for the Board in the first instance and in the trial court in the second. See Bowen v. Webb, 37 Mont. 479, 97 P. 839; Wallace v. Wallace, 85 Mont. 492, 279 P. 374, 66 A.L.R. 587; Rentfro v. Dettwiler, 95 Mont. 391, 26 P.2d 992; Dean v. Anaconda Co., 1959, 135 Mont. 13, 335 P.2d 854. There is room for doubt whether the Board accepted the hearsay testimony.

The first witness called by claimant was Dr. Deane C. Epler. A question was asked by claimant's counsel with reference to a statement made by William Penttila and filed in the case. The Penttila statement is entirely based on hearsay. Counsel for defendants objected to the evidence and stated his position that he would raise the objection to any statement, or any evidence presented, which was based on hearsay. The following shows in the transcript:

"Mr. Wood: We will allow this questioning, Mr. Niewoehner, if it is understood that it is to be connected up by direct evidence; if not, the objection will be sustained at a later time. The objection at the present time is taken under advisement. Go ahead. Let the record show that there is a continuing line of objection by counsel for defendant to this line of inquiry."

The record does not show any further proceedings which amplify the above statement. It does indicate the position taken by the examiner at the beginning of the hearing. The finding, of the court that the hearsay evidence standing alone was not adequate to sustain claimant's case by a preponderance of the evidence, is in effect a finding that from the whole case, giving the testimony the weight it deemed it was entitled, the court found claimant did not sustain the burden of proof. In other findings, both the Board and the court found there was no industrial accident and no causal relationship between the alleged accident and the resulting death. The additional conclusion is not necessary to decide the case. When it was found no industrial accident occurred, the case was ended. In any event, it merely points out that the court in this case did not regard the hearsay evidence as sufficient to establish the claim. While this court has consistently disregarded technical rules of evidence in Workmen's Compensation cases, and has been most liberal in its interpretation of the law affecting such claims in favor of claimant, it must be conceded here that the evidence, in support of claimant's case, to be accepted as being sufficient to justify the overruling of the order of the Board and the trial court, would require the court to go far beyond the previous rulings of the court in determining what is the preponderance of the evidence. A brief resume of the evidence will show this to be true.

In support of her case, claimant produced four witnesses, Dr. Deane C. Epler, testified as a witness for the claimant and also was called as a witness for the defendants. He made an examination of the decedent on December 17, 1956. At that time, he found extensive heart muscle damage with left bundle branch block. In his opinion, decedent had had a long-standing coronary heart disease. He had previously treated Mr. Bergan. The examination in December was the first occasion he had to investigate the heart condition, and he gave as his opinion that he undoubtedly had had changes in his

heart for some period of time. A hypothetical question was put to the doctor (based on hearsay evidence) stating that decedent was operating a hand-operated elevator or man-lift, and while in the upper part of the elevator the grain conveyor became plugged and the belt stopped, which fact was recognized by him from the sound, and that he immediately jumped on the man-lift and started to pull himself down to the main floor to shut off the flow of grain; that just as he reached the main floor, he ''jumped off the man-lift and as he hit the floor he said that pain hit him in the chest region''; that he cleaned up a pile of grain but said that he didn't feel good at all; that he had called Dr. Epler that evening when he got home. The doctor was then asked whether based upon that history of ''an accident and your knowledge of the medical facts in this case'', he had an opinion, that he could state with reasonable certainty, as to whether the terminal heart failure which developed in December, could have been caused by the unusual exertion and excitement of that accident. His response was that he could only say that exertion could have been severe enough to bring on this attack of chest pain and done some damage that subsequently got him into progressive heart failure. The doctor stated on cross examination decedent never gave him any history of any specific accident while employed by the defendant Company. He stated that he discussed his condition with him quite fully during this entire period; that no history of any accident or the possibility of any such accident occurring in December of 1956 or of the possibility of some accident in January of 1957, was ever given him by decedent. This question and answer was given:

''Q. As a result of your examination of him and knowing of his condition, is it necessary or would it have been necessary for this accident to have had any strain to have —or exertion, to have brought on this condition which he had to have brought on, let's say, a heart attack? A. No,

he could have been just sleeping in bed without any * * *

"Q. And would you say then that the heart attacks of this sort with no straining or exertion, they are usual? A. Very common.

"Q. And in other words, it doesn't take any strain or exertion to bring on an attack? A. No, sir.

"Q. With a type of condition that he had? A. No, sir.

"Q. Would it have been possible then for him to be completely immobile, say, sleeping or sitting in a chair, or not moving any particular portion of his body, and still have had a heart attack? A. Entirely possible. * * *

"Q. In other words, the day that he had these chest pains, the chest pains could very well have occurred without any activity whatsoever? A. That is right. * * *

"Q. The particular heart damage that he had would it be correct to say that had undoubtedly occurred over a considerable period of time? A. I would certainly think so. From the changes that occurred on the cardiogram weren't changes we would see overnight."

When called as a witness by the defendants, Dr. Epler testified that the injuries related by the several witnesses, based on hearsay statements from decedent to them, did not cover the kind of an injury one would expect to precipitate or cause any damage to the heart or additional damage to the heart. He explained that he had seen the patient two days after the alleged accident at which time his cardiogram was taken showing damage to the heart muscle, but his white blood count and sedimentation rate were both normal, both of which suggested that he had no acute damage or additional damage within 24, 48, or 72 hours of the time the tests were made. This question and answer were given:

"Q. In other words, that the deceased's condition was not aggravated from any particular accident within, say, a 72 or 48 hour time previous to that examination? A.

34

There is no evidence that it was."

The testimony of William Penttila consists of an unsworn statement made by him and received by the Industrial Accident Board on February 3, 1958, but which is dated December 5, 1957, in which he states: that during the winter of 1956-57, he went to the hospital to visit with decedent; that Mr. Bergan had given him the information that during December 1956, he went up the hand-operated elevator and while in the upper part of the elevator the conveyor became plugged and the belt stopped; that he recognized this from the sound and immediately jumped on the man-lift and started to pull himself down to the main floor to shut off the grain flow; that for a short distance on the descent, the man-lift becomes bound by the leaning of the elevator and is extremely difficult to pull through and that it seemed to be more so at this time because he was in a hurry. Just as he reached the main floor, he jumped off the man-lift and as he hit the floor he said that a pain hit him in the chest region, that thereafter he did not feel good for the rest of the day and called Dr. Epler that evening when he got home. At the hearing before the Board, Mr. Penttila testified that he was an old family friend of decedent and had lived at his home; that he had called on him at the hospital and was curious to know what his condition was and how he came to be in the hospital, and decedent related to him "that he had had some flu the first of the month but sometime in the middle of December, he had gotten sick." In explaining the alleged accident, he said decedent stated to him that "he hopped on the man-lift and pulled himself down and that thing he said was real sticky about half-way down and there was a bind and it was difficult to pull through that two or three feet, but he was hurrying and he kept on going and *as he got near the floor before the man-lift got all the way to the floor,* he was in such a hurry to hit that lever and shut the flow of grain off, that he *jumped a few feet off* of the man-lift and he said just as I hit the floor

I got this pain, but he said 'I reached up and shut that lever off' and then he said 'I went down there to look at that pile of grain and took my time and shoveled the grain out of that bin.' "

It should be noted that the original statement sent to the Board varied from his statement made in his testimony, in that in the first instance he stated that "he jumped off the man-lift" *just as he reached the main floor,* and in his testimony before the Board he stated he jumped off the man-lift a few few feet off the floor.

The witness, Roy M. Surface, made a sworn statement purporting to be subscribed on March 27, 1958, and received by the Industrial Accident Board on April 10, 1958, in which he stated that within a few days after December 15, 1956, he stopped in at the elevator to visit with Bergan, in which the decedent told him that on the 15th day of December, 1956, he heard a noise in the elevator. "He went up the man-lift, but it hit hard when he hit the top. The belt wasn't working right, and the grain was running over when he got up there. When the man-lift hit the top it jarred him. When he came down, something happened so that the man-lift hit the bottom. It hit the bottom hard. He said he was jarred up all the way through his body and in his legs." In his testimony before the hearing examiner, he testified that he went out to see Mr. Bergan on December 15, 1956, and "he told me the whole story then, just after he got hurt; and that decedent then told him 'he thought the grain was running over upon the elevator, something was wrong up there and he went up the man-lift and it stuck on him going up and when he went up it kind of jarred him there, and then, when he got back down, why it just, about half way, it just dropped like that (indicating)'. Decedent told him that it hurt him from the bottom of his feet clear to the top of his head."

It will thus be seen there are two separate versions of how the alleged accident of December 15, 1956, occurred, purportedly

as related by decedent. By one version he felt the pain on jumping a few feet from the elevator to the floor, and by the other he was bumped and jarred when the elevator hit the top going up and the bottom coming down. These two witnesses were the only ones to testify with reference to the alleged accident on December 15, 1956.

Th witness, Frank L. Maryott, was the only witness who testified as to happenings on January 3, 1957. He testified that he was a helper for decedent at times in the elevator; that on the 3rd of January, 1957, he was with Mr. Bergan in the elevator, in response to a call from decedent for his assistance. At that time Bergan was not feeling well; that Bergan had taken the nuts off the top of a hot box and "he was bothered and his heart was bothering him," and he says "I just can't do it, I would like to have you come and take it off for me." Summarized, the testimony goes no further than to show that decedent had climbed the ladder eight or ten feet and had done nothing but take some nuts off a hot box; that decedent was not able to help the witness but had stood there and watched him as he completed the job of removing the hot box. This is the only evidence to show any accident or strain on January 3rd (alleged in the claim to have been January 2nd.)

On cross examination, he was asked if he knew of Mr. Bergan being involved in any specific accident in December of 1956, and he stated in answer:

"Accident? No, I couldn't say that he had an accident.

"Q. And you don't know about any specific accident in January of 1957? A. No.

"Q. Except this incident you told about here that he went up the ladder and he came down and wanted you to finish it? A. Yes sir. Well, he was in the hospital, through most of January."

It is noted no evidence of the extent of the strain, if any, was given. The testimony is in generalities and mostly by way

of conclusion of the witness without giving the basis for the conclusion.

On behalf of the defendants, four witnesses who were long-time friends of decedent, and who had visited with him at various times following December 15, 1956, and January 2, 1957, testified that decedent had never said anything about an accident to them. The claimant herein, the widow of decedent, never testified, either in the hearing before the Board or before the court, and the only conclusion that could be drawn from this fact would be that if she had been advised of any accident by the decedent, she would have so testified. The employer made an affidavit that no report of any accident had ever been made by decedent, and he had no knowledge of any such accident. Decedent never gave his examining physician any history of an accident.

In view of the testimony, we are of the opinion that we cannot say, as a matter of law, that the decision is against the weight of the evidence.

The trial court found that the notice required by section 92-807, R.C.M.1947, as in effect at the time herein involved, was not given by decedent. We have found that the holding of the trial court that decedent did not suffer an industrial accident is sustained by the evidence. In view of this fact, a ruling on the above point is not required and anything said thereon would be dictum.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES and ANGSTMAN concur.

MR. JUSTICE ADAIR dissents.

On petition for rehearing:

MR. JUSTICE ANGSTMAN dissenting from order denying rehearing:

Upon further study of this case, on motion for rehearing, I

38

have sufficient doubt about the correctness of the majority opinion to believe that the petition for rehearing should be granted and the cause reargued.

DONE this 15th day of August 1960.