402 P.2d 414

**REYNOLDS METALS CO. of Arizona,**
**Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent, Insurance Carrier,**
**Kathryn Barker, Respondent Widow.**

No. 8129.

Supreme Court of Arizona.

En Banc.

May 26, 1965.

Snell & Wilmer, Phoenix, for petitioner.

Richard J. Daniels, Chief Atty., Industrial Commission of Ariz., for respondent.

Evans, Kitchel & Jenckes, Phoenix, for respondent widow.

BERNSTEIN, Justice.

This matter comes before the Court pursuant to a Writ of Certiorari sought by petitioner-employer, Reynolds Metals Company, to review an award of the Industrial Commission granting a widow's claim to Kathryn Barker for the death of her husband, Robert H. Barker.

. Barker worked for Reynolds for approximately 15 years before his death on September 21, 1961. He was employed as an electrician and worked in the cast house at Reynolds. This job required him to work constantly over his head installing strips of stainless steel and bricks in ladle heads. The bricks were especially made, heavy, and varied from four inches to twelve inches in length with varying widths.

On June 13, 1961, Barker was struck on the head by a falling brick while working at his job. He told two fellow-employees, Charles B. Feltus and B. W. Gibson of the accident immediately after it happened. These employees were present but did not see the accident. Gibson was asked to look at Barker's head, since the blow was sufficiently severe to make him think it had,

cracked the skin. Barker was balding and Gibson observed a "bump", but no "bruise or gash of the skin." No report was made to Reynolds, the employer, at that time. Barker told his wife, his son and daughter-in-law of the accident the next day, June 14, 1961. The blow had given him a severe headache. A few days after the accident, the headache was so severe that Mr. Barker was forced to lie down and Mrs. Barker used cold towels in an attempt to relieve his suffering.

In addition to members of the Barker family, the bruise or bump on Mr. Barker's forehead was observed by a family friend, Mrs. Adele M. Sawyer. Barker told her of the accident at Reynolds and that it had caused a "terrific headache". Mrs. Sawyer testified that it was a "nasty looking bruise" and remained visible for some time.

While his wife was back East, during late June and July, the son and daughter-in-law noticed that Mr. Barker was not himself, and he lost interest in his home activities. He would sit down and fall asleep and he had difficulty remembering events. These conditions developed shortly after the accident. While at work, Mr. Barker was observed "a lot of times" sitting down, holding his head, something he had never been known to do prior to the accident. He complained to his co-workers on many occasions of having "a splitting headache".

Barker's health steadily deteriorated after the accident and finally, on September 2, 1961, he was required to go home from work because of the pain. He was first seen by Dr. Harry Ramseyer, the family doctor who referred him to Dr. George T. Hoffman, a neurosurgeon, for expert attention. Barker reported the accident at Reynolds to both doctors and Dr. Hoffman's medical history states that "patient gives a history that he got a bump on the right side of the forehead, pointing to the eyebrow level, probably three months ago."

Barker was taken to Good Samaritan Hospital and on September 7, 1961, Dr. Hoffman performed a right frontal trephination, biopsy and internal decompression of a right frontal tumor. At the time of surgery, the tumor was diagnosed as being "Glioblastoma Multiforme", or a primary tumor nonmalignant.

The type of tumor involved appeared of major importance early in the case, since a pathologist employed by Reynolds reported that the brain tumor was a secondary or metastatic carcinoma, i.e., that the brain tumor was caused by a primary tumor somewhere else in the body, and a group of medical experts first concluded that any blow to Mr. Barker's forehead was immaterial, since it was stated that a secondary type tumor could not be aggravated by a blow.

At the time of hearing, Drs. Jarvis and Barger, two expert pathologists retained by Mrs. Barker, testified that in their opinion, assuming the facts to be true as stated by the fellow employees, friends and Barker family (severity of blow, site of blow, and onset of symptoms) the blow probably hastened Mr. Barker's death from the secondary type tumor.

The medical criteria which are considered material in determining whether a blow aggravated a preexisting tumor, were stated as follows by Dr. Jarvis:

> "* * * that an injury did in fact occur and that it occurred *at the site or at a site which could conceivably have aggravated the tumor;* thirdly, that it be of sufficient severity to have aggravated the tumor; and fourthly, that symptoms of this aggravation should be manifest within a reasonably short time after the injury and that the symptoms then progress in a manner which leads one to believe that the condition was aggravated by the injury." (Emphasis supplied.)

Reynolds contends that the medical criteria properly stated should substitute the words "in the immediate vicinity of the tumor" for those italicized above. In the view which we take of the case, this slight difference in medical opinion is immaterial.

After the case was submitted the Commission's Chief Referee, who had served as hearing referee, pursuant to Rule 41, Rules of Procedure before the Industrial Commission, filed his Referee's Report, the major findings being as follows:

> "5. That deceased, Robert H. Barker, sustained injury by accident arising out of and in the course of his employment with the above named employer on or about June 13, 1961.
>
> "6. That said injury occurred as the result of being struck on the head by a falling brick.
>
> "7. That the blow received was localized at or near the site of a preexisting brain tumor.
>
> "8. That said blow did accelerate and/or aggravate the growth of said tumor.
> "9. That as a result of said acceleration or aggravation, said injury contributed in part to the subsequent demise of Robert Henry Barker."

and the Referee recommended that the widow's claim be accepted, concluding:

> "This Referee relies upon the testimony of witnesses and statements of the deceased that the injury was sustained on the day as alleged, and also upon the medical testimony that such a blow could within reasonable medical probability accelerate or aggravate the growth of a brain tumor."

The employer submitted objections to the report, arguing that the weight of the evi-

dence supported the employer's position as hereinafter explained. The widow filed a memorandum supporting the report, after which the claim was submitted for final consideration by the Commission. On August 14, 1963, the Commission entered its Decision Upon Rehearing and Amended Findings and Award, awarding a death benefit to Mr. Barker's widow, Kathryn Barker.

Reynolds thereafter filed a Petition for Rehearing. The basis for the Petition was that all testimony, except that of Feltus and Gibson was "not only hearsay, but was given by witnesses who were either close friends of the Barkers or members of the Barker family". Thereafter Reynolds' petition was denied and the case was brought here by certiorari.

The only question raised by Reynolds in this Court is whether the Industrial Commission may base an award solely on hearsay testimony. The Commission is authorized to receive hearsay testmony by A.R.S. § 23-942:

"The commission shall not be bound by the rules of evidence or by technical or formal rules of procedure other than as provided in this chapter. The commission may conduct investigations in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out the spirit of this chapter."

More than half the states' workmen's compensation laws have similar provisions. 2 Larson, Workmen's Compensation Law § 79.30.

In 1928, in Ocean A. & G. Corp. v. Industrial Com., 34 Ariz. 175, 182, 269 P. 77, 79, this Court adopted the minority rule that hearsay testimony is sufficient to support an award as follows:

"The statutes of Virginia and California also provide, in substance, that the Commission is not bound by the common-law or statutory rules of evidence, and the Supreme Court of those states have held that under such statutes hearsay evidence in compensation cases is admissible, and *if probatively sufficient in the judgment of the commission, it will sustain an award in the same manner as would direct testimony*. American Furniture Corp. v. Graves, 141 Va. 1, 126 S.E. 213. Pacific Employers' Ins. Co. v. Industrial Acc. Com., 77 Cal.App. 424, 246 P. 825." (Emphasis supplied.)

Respondent urges us to adopt the "residuum rule" of Carroll v. Knickerbocker Ice Co., 218 N.Y. 435, 113 N.E. 507. Under this rule hearsay testimony is admissible, but alone cannot support an award; there must be a residuum of legal evidence. The residuum rule, however, has been under constant attack ever since it was announced,

2 Larson, supra, § 79.21 – § 79.30, 1 Wigmore, Evidence, pp. 39–43, 78–89.

 Much hearsay is worthless rumor or gossip, but there is also such a thing as "persuasive hearsay" and the fact-finding commission may be given credit for the ability to distinguish the one from the other. 2 Larson, supra, § 79.23. Judge Seabury said in his dissent in Carroll, supra, in which he advocated the rule afterwards adopted in Arizona, that the Commission is not obliged to act upon all hearsay evidence that is presented, but it *may* act upon it where the circumstances are such that the evidence offered is deemed by the Commission to be trustworthy. 218 N.Y. at 442, 113 N.E. at 509.

This Court has consistently followed the rule laid down in Ocean, supra. In Young v. Hodgman & MacVicar, 42 Ariz. 370, 377, 26 P.2d 355, 358, where the evidence was hearsay and the Commission found against the claimant, we said "we would not feel like reversing the Commission" if it had found for the claimant. In Phelps Dodge Corp. v. Ford, 68 Ariz. 190, 196, 203 P.2d 633, 638, we said the Commission had "freedom to pursue whatever course its judgment dictates in gathering its facts so long as it has any basis whatever in logic * * *." In Hudgens v. Industrial Commission, 83 Ariz. 383, 384, 321 P.2d 1039, 1040, we said:

"Because petitioner was working alone, he alone knew what strenuous activity, if any, preceded the heart attack, but his condition made it impossible for him to testify concerning his activity preceding the attack. Thus he must rely upon circumstantial and hearsay evidence to sustain his burden of establishing that he engaged in strenuous activity prior to the heart attack. He may rely upon circumstantial evidence, Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286, and the Commission may properly admit hearsay evidence, Kelsey v. Industrial Commission, 79 Ariz. 191, 286 P.2d 195."

The rule which we restate does not authorize the unrestricted use of all types of tale bearing as the exclusive basis for an award. In Ocean we referred to hearsay which was "probatively sufficient in the judgment of the commission". In Gomez v. Industrial Commission, 72 Ariz. 265, 233 P.2d 827, the hearsay testimony was obtained in an uncertain and unguarded manner through an unqualified interpreter, and was rejected by this Court.

 The objective of the New York court in Carroll was to prevent awards based on insubstantial evidence. We believe that this objective can be better achieved by upholding awards based on evidence that is technically hearsay, but of the persuasive type, rather than on the mechanical

requirement that there must be a residuum of "legal evidence" somewhere in the record. Professor Larson phrases the preferable rule permitting hearsay evidence alone to support an award with the qualification that "in all the circumstances, the hearsay evidence is of a character to satisfy a reasonable mind". 2 Larson, supra, § 79.22. And it is in this form that we adopt it.

■■■ The Industrial Commission may rely on hearsay where it is of the kind on which reasonable men are accustomed to rely in serious affairs. See National Labor Relations Board v. Remington Rand, Inc., 130 F.2d 919, 930 (2nd Cir. 1942). Awards must have a basis in evidence "having rational probative force", Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126.

■■■ The evidence in this case is sufficient. The testimony of the fellow employees, who saw the bruise immediately after the accident was clearly legally admissible. Evidence of the decedent's complaints of pain to his family and friends might be admitted, 6 Wigmore, supra, § 1718; Casualty Insurance Co. of California v. Salinas, 160 Tex. 445, 333 S.W.2d 109, 117, 90 A.L.R.2d 1056. The same is true of complaints made to a physician, 6 Wigmore, supra, § 1719; Wise v. Monteros, 93 Ariz. 124, 379 P.2d 116. The physician's record of the patient's statements were admissible, Greengarb v. Arre, 62 N.J.Super. 420, 163 A.2d 173, 182–183.

Awards of compensation, upon evidence substantially similar to that in this case, have been upheld in cases where there were no eyewitnesses to the injury nor any immediate report to the employer even in the states where the residuum rule is followed. Hammond v. Industrial Commission, 84 Utah 67, 34 P.2d 687; Ogden Iron Works v. Industrial Commission, 102 Utah 492, 132 P.2d 376; Associated General Contractors v. Cardillo, 70 App.D.C. 303, 106 F.2d 327 (1939); Jessie v. Dash, 194 Pa. Super. 1, 165 A.2d 280; McCann v. Hy-A1 Lunchenette, 5 A.D.2d 1026, 173 N.Y.S.2d 137.

■■■ We hold that the Commission's findings are reasonably supported by the evidence and the award is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concurring.