Jay WHALEY, Appellant,

v.

ALASKA WORKERS' COMPENSATION
BOARD, Peter Kiewit Sons, Inc., and
Home Insurance Co., Appellees.

No. 5701.

Supreme Court of Alaska.

July 30, 1982.

Bradley D. Owens, Jermain, Dunnagan & Owens, Anchorage, for appellant.

Liam J. Moran, Hagans, Brown & Gibbs, Anchorage, for appellees.

Before BURKE, C. J., and RABINOW-ITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Chief Justice.

This appeal challenges a disposition by the Alaska Workers' Compensation Board which has been affirmed by the superior court. We, in turn, affirm in part and reverse in part.

Jay Whaley sustained an on-the-job injury on May 1, 1976, when his feet were run over by a forklift. In trying to extricate himself from the equipment, he strained his neck and shoulders and developed a condition diagnosed as thoracic outlet syndrome, a compression of the blood vessels and nerves in the shoulder area, resulting in pain and numbness in the arms. At the time of his injury, Whaley was employed by Peter Kiewit Sons, Inc., as a heavy equipment mechanic. The Home Insurance Company provided the employer with its workers' compensation insurance.

This matter has been contested from the outset and has been before the Board sever-al times. The question whether Whaley's thoracic outlet syndrome was causally related to the injury to his feet was heard by the Board on February 4 and 10, 1977. Relying on medical reports, the Board found a causal relationship and on March 24, 1977 awarded Whaley temporary total disability benefits.

After a hearing on August 29, 1978,[1] the Board rendered a decision on September 29, 1978, which denied Whaley's request for permanent disability benefits. The Board stated that: (1) Whaley still suffered from a minor disability; (2) he was qualified as an auto mechanic; and (3) his disability did not prevent him from reentering the auto mechanic's trade. Because the Board determined there would be some loss of future wages, it awarded Whaley $7,950.00 as permanent partial disability benefits and $1,050.00 in attorneys' fees.

On July 27, 1979, the Board held a hearing to consider Whaley's request for modification of the September 29, 1978 order. His application alleged that the Board erred in determining the nature and extent of his disability and that there had been a change in his condition. On November 26, 1979, the Board denied Whaley's request for modification, finding that there had been no showing of mistake and that Whaley had suffered no compnsable change of condition.

Whaley appealed to the superior court which affirmed the Board's decision and granted Peter Kiewit Sons, Inc., and The Home Insurance Company partial attorneys' fees. We affirm the superior court's affirmance of the Board's decision and reverse the superior court's grant of attorneys' fees.

Whaley first argues that the Board failed to give due consideration to his argument and the evidence he presented in the July 27, 1979, hearing regarding modification. He has correctly stated the standard the Board must apply to applications for

[1]. The Board also held a hearing on June 21, 1977, concerning a late payment penalty on Whaley's compensation award and a request for attorneys' fees. The decision was rendered on September 1, 1977, and does not raise any issues relevant to this appeal.

modification. The Board must give "due consideration to any argument and evidence presented with a petition for modification." *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169 (Alaska 1974). Whaley, however, misapplies the standard. He argues that because the Board did not rely on the arguments and evidence presented, due consideration was not extended to them.

Whaley presented two kinds of evidence at the modification hearing: his own testimony and letters from two physicians. As indicated below, the Board's exclusion of Whaley's own testimony was proper. Thus, the Board was not required to consider that evidence. As to the letters, the Board noted at the hearing that the letters would be considered. Further, in its decision of November 26, 1979, the Board noted that it had considered the evidence.

■ Whaley's argument is that because no evidence other than the letters was presented at the hearing, the fact that the Board did not reverse its decision indicates that no consideration was given to the evidence. This reasoning ignores the Board's power to consider the new evidence against the backdrop of evidence presented at prior hearings. *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169 (Alaska 1974). It was the Board's task to weigh the conflicting evidence of prior medical reports and the new evidence submitted by Whaley. To force the Board to reverse its decision merely because additional evidence was presented would reduce its discretionary authority to

a "mere illusion." *Cf. Interior Paint Co. v. Rodgers*, 522 P.2d at 169. And, it is not our task on review to reweigh conflicting evidence or substitute our judgment for that of the Board. *Burgess Construction Co. v. Smallwood*, 623 P.2d 312, 317 (Alaska 1981); *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1049 (Alaska 1978). The due consideration standard, then, does not require the Board to relinquish its authority to weigh the evidence before it. Nor does it require the Board to give conclusive weight to new evidence.[2]

■ Whaley further contends that the Board's exclusion of his testimony, as hearsay, constituted error. He argues that AS 44.62.460(d) and 8 AAC 45.120(c)[3] provide that compensation hearings need not be conducted according to technical rules of evidence and that hearsay evidence may be used in Board hearings. This is a correct statement of the law so far as it goes. For Whaley to then conclude that the Board may not exclude any evidence on hearsay grounds is too simplistic a view of the Board's authority.

The testimony excluded concerned: (1) Whaley's perception of the causation and effect of a pulmonary embolus he suffered, as stated to him by Dr. Green; and (2) his perception of the causal relationship between the pulmonary embolus and the thoracic outlet syndrome and the effect on his disability, as stated to him by Drs. Green and Feller. The Board refused to admit Whaley's testimony and relied solely on the letters from the doctors.

**2.** Whaley's second specification of error is that the Board's decision was contrary to law as the appellees did not rebut the prima facie case he presented at the hearing. And, as the letters were the only evidence submitted, the issue, he reasons, must be resolved in his favor.

The appellees, however, relied upon previously submitted evidence. This returns us to the Board's authority to weigh the conflicting evidence of the letters and the evidence previously submitted. Again, it is not our task to reweigh the evidence on review and we find no error.

**3.** AS 44.62.460(d) provides that:

The hearing need not be conducted according to technical rules relating to evidence and witnesses. Relevant evidence shall be admit-

ted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of a common law or statutory rule which makes improper the admission of the evidence over objection in a civil action. Hearsay evidence may be used to supplement or explain direct evidence but is not sufficient by itself to support a finding unless it would be admissible over objection in a civil action. The rules of privilege are effective to the same extent that they are recognized in a civil action. Irrelevant and unduly repetitious evidence shall be excluded. *Id.* The text of 8 AAC 45.120(c) parallels the statutory provision in an almost verbatim fashion.

The letters did not indicate a causal relationship between the pulmonary embolus and the thoracic outlet syndrome. Nor did they indicate that the thoracic outlet syndrome was in any way life threatening, as stated by Whaley in his excluded testimony. Dr. Feller, however, did disagree as to the extent of the disability due to thoracic outlet syndrome.[4]

Whaley reasons on appeal that the liberalization of the rules of evidence in hearings before the Board requires the Board to accept all hearsay evidence. The provisions cited above, however, do not contain such a requirement. The statute states that all relevant evidence, even if hearsay, "shall" be admitted in Board hearings *provided* it is evidence "responsible persons are accustomed to rely on in the conduct of serious affairs." AS 44.62.460(d). This language gives the board discretion to exclude hearsay evidence where it appears untrustworthy. *Reynolds Metals Co. v. Industrial Commission*, 98 Ariz. 97, 402 P.2d 414, 417–18 (1965); *Bergan v. Gallatin Valley Milling Co.*, 138 Mont. 27, 353 P.2d 320, 321 (1960); *see* 3 Larson, *Workmen's Compensation Law* §§ 79.22–.23 (1976). Boards in other jurisdictions have thus excluded as untrustworthy testimony by a claimant regarding a discussion with a physician concerning the cause and extent of a medical condition. *Kelsey v. Industrial Commission*, 79 Ariz. 191, 286 P.2d 195, 198 (1955); *Pacific Employers Insurance Co. v. Industrial Accident Commission*, 47 Cal.App.2d 494, 118 P.2d 334, 338 (1941). Because Whaley's testimony on this subject could be considered untrustworthy for a number of reasons, including intentional fabrication, misunderstanding of the impact of the doctors' statements, or because the doctors' statements themselves were casual and ill-considered, and because it did not corroborate direct evidence in the letters, the Board's exclusion of his hearsay testimony was not error.

Whaley next argues that the Board's finding that he was not a credible witness was an inadequate finding of fact, as the Board did not explain the basis upon which it so found. One primary purpose of findings of fact is to give an appellate court grounds upon which to provide intelligent review. *See Hewing v. Alaska Workmen's Compensation Board*, 512 P.2d 896, 898 (Alaska 1973). Credibility decisions regarding witness testimony, however, are uniquely within the province of the Board and it is not our task on review to reweigh them. 3 Larson, *Workmen's Compensation Law* § 80.20, at 15–385 (1976). There is less need, then, for extensive findings of fact regarding witness credibility. Our task when reviewing a Board decision is to ascertain whether it was based upon substantial evidence, evidence which a reasonable mind might accept as adequate to support a conclusion. *Black v. Universal Services, Inc.*, 627 P.2d 1073, 1075 (Alaska 1981); *Burgess Construction Co. v. Smallwood*, 623 P.2d 312, 315 (Alaska 1981). Given the reports of several doctors indicating that Whaley exaggerated his symptoms, and films of Whaley working at normal tasks without apparent pain or restriction,[5] we

---

4. The full text of Dr. Feller's letter provided:

Mr. Jay Whaley asked me to write you a note about his work limitations and it is my feeling that, since he does have a thoracic outlet syndrome, he should not be doing heavy-duty or mechanic's work at this time. If he does have surgery in the future for his problem he presumably could return to heavy-duty work but that will remain to be seen.

No medical report accompanied Dr. Feller's letter. The full text of Dr. Green's letter provided:

On November 27, 1975 my patient, Jay L. Whaley, date of birth 10–8–47, visited my office. He had experienced severe chest pain and vomiting on November 24, 1978 and still had residual, but improved chest pain.

Examination of his chest and other parts was within normal limits. The possibility of a pulmonary embolus was considered. Mr. Whaley decided to forego serial x-rays which might have revealed a finding along that line. He did relay a message a few days after his visit that he had coughed up some blood tinged sputa which would support the diagnosis of pulmonary embolus thereby explaining his pain.

Again, no other medical reports accompanied the letter.

5. Dr. Lyons reported that the applicant over-reacted during the examination particularly when

think the Board's finding is clearly supported by the record.

■ Whaley also argues that the Board's decision as to the extent of his disability is unsupported by substantial evidence. We disagree. The several doctors examining him generally concurred that Whaley suffered from thoracic outlet syndrome, although they disagreed whether it constituted a serious disability preventing Whaley from carrying on a mechanic's trade.[6] It wasn't until the Board was presented with Dr. Feller's letter that Whaley challenged the Board's finding regarding the extent of his disability.

The Board chose not to rely on Dr. Feller's letter; it chose, instead, to rely on the previously submitted medical reports. We are not permitted to reweigh the evidence or choose between competing inferences, *Burgess Construction Co. v. Smallwood*, 623 P.2d 312, 317 (Alaska 1981). Having concluded that substantial evidence existed to support the Board's decision, we reject Whaley's argument.

■ Whaley's final specification of error is that the superior court abused its discretion in granting attorneys' fees to the appellees when they were successful on appeal. We agree.

Appellate Rule 508(e)[7] grants a reviewing court the discretion to award attorneys' fees to a successful party. This rule is applicable to appeals to the superior court from an administrative agency such as the Board. Alaska R.App.P. 601(b). Whaley argues, however, that the application of the Appellate Rules is limited by the statutory procedures and policy considerations of Alaska's Workers' Compensation Act, in particular AS 23.30.145 which provides for the award of attorneys' fees to claimants.

To permit an appellate court to grant attorneys' fees to prevailing party-defendants without consideration of the underlying purpose of the Alaska Workers' Compensation Act, would severely undermine the effectiveness of the statute. The statute is designed to provide the most efficient, dignified, and certain means of determining benefits for workers sustaining work-connected injuries, *Searfus v. Northern Gas Co.*, 472 P.2d 966, 969 (Alaska 1970), citing *Gordon v. Burgess Construction Co.*, 425 P.2d 602, 605 (Alaska 1967), and is to be liberally construed in favor of the employee, *Hood v. State, Workmen's Compensation Board*, 574 P.2d 811, 813–15 (Alaska 1978). In particular, AS 23.30.145 is unique in its generosity to claimants and their counsel. *Haile v. Pan American World Airways, Inc.*, 505 P.2d 838, 841 (Alaska 1973).

A routine grant of attorneys' fees to employer-defendants would undermine the purposes of the statute and severely limit a claimant's ability to seek appellate relief. Thus, as we did in *Wise Mechanical Contractors v. Bignell*, 626 P.2d 1085, 1087 (Alaska 1981), we choose here to reconcile our rule-making authority with the "broad

he elicited the biceps reflex, a testing procedure which should not produce pain. Dr. Raisis of the Virginia Mason Clinic reported that the results of the neurological examination were completely inconsistent with Whaley's complaints and referred to Whaley as an "anxious young man who seems to have some functional overlay." Dr. Callahan stated that: "I personally feel that this patient is over-reacting as far as his symptomatology is concerned. He has no real evidence of any musculo-skeletal disability at this time." Dr. Dittrich stated that "His symptoms are somewhat suggestive of acute cervical strain, although the radiation to the extremities would be on the basis of nerve root compression. I could find no evidence of neurological deficit to substantiate this." The insurance carrier submitted films of Whaley taken on March 28, 1978 and May 1, 1978 which show him completing strenuous chores and using the full range of his bodily motions without apparent pain or limitation.

6. For example, Dr. James' report stated that Whaley's injuries amounted to a nine percent permanent partial disability of the whole man. Dr. Lyon's report stated that there would be no restriction in Whaley's ability to lift, that he complained of extremity numbness only when he slept, and that surgery or exercise could alleviate the symptoms.

7. The motion for attorneys' fees was originally made under former Appellate Rule 29(d). Such a motion would now be made under Appellate Rule 508(e). The language of both rules is substantially the same.

public policy considerations which shaped and are embodied in workmen's compensation legislation." *Id.,* citing *Johns v. State, Dept. of Highways,* 431 P.2d 148, 152 (Alaska 1967). We therefore construe Appellate Rule 508(e) to require a finding by the appellate court granting attorneys' fees to an employer-defendant that a claimant's appeal was frivolous, unreasonable, or brought in bad faith.[8] As the record below does not indicate that Whaley's appeal was such a case, we hold that the superior court abused its discretion and reverse the trial court's grant of attorneys' fees to appellees.

In conclusion, we affirm the superior court's affirmance of the Board's decision regarding Whaley's petition for modification and reverse the superior court's grant of attorneys' fees.

AFFIRMED in part and REVERSED in part.

RABINOWITZ, J., concurs.

RABINOWITZ, Justice, concurring.

I do not agree with the court's conclusion that Whaley's hearsay testimony was properly excluded because it was "untrustworthy." AS 44.62.460 dispenses with the rules of evidence in administrative proceedings, and subsection (d) of that statute provides that evidence which would be inadmissible in a civil action, such as hearsay evidence, shall be admitted in an administrative proceeding if it is the kind of evidence "on which responsible persons are accustomed to rely in the conduct of serious affairs."[1] Certainly "responsible persons" routinely and justifiably rely on their physicians' statements in the conduct of their "serious affairs;" to argue to the contrary

would be ludicrous. Thus, I believe that Whaley's proffered testimony met the threshold requirement for admissibility;[2] the question of the trustworthiness of that testimony goes only to the weight of the testimony, not to its admissibility.[3]

Notwithstanding my disagreement with the majority on this point, I agree that the rulings of the Board and the superior court on the merits of Whaley's claim should be affirmed because the Board's error in excluding Whaley's testimony was harmless.

The statute which permits the introduction of hearsay testimony, AS 44.62.460(d), further provides that "[h]earsay evidence may be used to supplement or explain direct evidence *but is not sufficient by itself to support a finding unless it would be admissible over objection in a civil action* " (emphasis supplied). Here there was no direct evidence establishing a causal connection between Whaley's work-related medical problems and his later heart problems, and thus Whaley's testimony about his doctors' statements would not have been sufficient to support a finding that his heart problems were related to his on-the-job injury. Thus, the Board's erroneous evidentiary ruling was harmless, and the Board's decision should be affirmed.

---

**8.** This standard is currently used in employment discrimination appeals under § 706(k) of Title VII of the Civil Rights Act of 1964, *Christianburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648, 657 (1978), and has been applied to workers' compensation claims in at least one state. *Liberty Mutual Ins. Co. v. Taylor,* 590 S.W.2d 920, 922–23 (Tenn.1979).

**1.** *See also* 8 A.A.C. 45.120(c).

**2.** *See Cook v. Alaska Workmen's Comp. Bd.,* 476 P.2d 29, 31–32 (Alaska 1970).

**3.** Although there may be reasons why Whaley's testimony might have been untrustworthy, such as intentional fabrication, or inaccurate recollection, that testimony would not be excluded on trustworthiness grounds alone even in a civil or criminal action. *See* Alaska R.Evid. 601, which rejects the notion that a witness may be incompetent to testify because he has an interest in the outcome of the case.