Daniel SCHORR and Ronald Gillum, Appellants,

v.

FRONTIER TRANSPORTATION COMPANY, an Alaska Corporation, Dean C. McKenzie, and Daniel Nelson, Appellees.

No. S–7306.

Supreme Court of Alaska.

July 3, 1997.

Kenneth W. Legacki, Anchorage, for Appellants.

William F. Mede, Owens & Turner, Anchorage, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

RABINOWITZ, Justice.

## I. INTRODUCTION

In this appeal we are asked to review the superior court's grant of summary judgment against long haul truck drivers claiming overtime compensation under the Alaska Wage and Hour Act (AWHA). Additionally, Schorr and Gillum seek a determination that the AWHA, prior to its amendment in 1995, did not provide for an award of attorney's fees and costs to a prevailing employer. We reverse and remand.

## II. FACTS AND PROCEEDINGS

Ronald Gillum and Daniel Schorr were hired as long haul truck drivers by Frontier Transportation, an Alaska Corporation engaged in the business of transporting goods for hire within the state.[1] At the relevant time Appellees Dean McKenzie and Daniel Nelson were each officers of Frontier.

The employment duties of Schorr and Gillum consisted of driving trucks from a point

1. Most of the assets of Frontier have been sold to Alaska West Express, Inc., a subsidiary of Lynden Transportation.

of origin to a point of destination, making various stops along the way where instructed. Like all of Frontier's drivers, Schorr and Gillum were also required to perform miscellaneous "hostling duties," such as tying down loads, chaining and unchaining, fueling, and checking the vehicle.

As long haul truck drivers engaged in the transportation of goods in commerce, plaintiffs' "hours of service" were governed by the Federal Motor Carrier Safety (FMCS) Regulations of the Federal Highway Administration.[2] In addition to dictating the number of hours a truck driver may drive, the FMCS regulations also require drivers to keep precise records of their duty status.[3]

On May 18, 1992, Schorr and Gillum brought suit under the Alaska Wage and Hour Act (AWHA) against Frontier, McKenzie and Nelson (Frontier), seeking payment of overtime compensation allegedly owed pursuant to AS 23.10.060, liquidated damages pursuant to AS 23.10.110, and penalties pursuant to AS 23.05.140,[4] as well as costs, interest, and attorney's fees. The superior court ultimately granted Frontier's motions for summary judgment on all claims for overtime arising after May 18, 1990. Final judgment was entered on August 9, 1995. The superior court subsequently awarded Frontier $13,997 in attorney's fees pursuant to Civil Rule 82 and $4,934.94 in costs under Civil Rule 79. Schorr and Gillum now bring this appeal.

**2.** 49 C.F.R. §§ 395.1–.15.

**3.** 49 C.F.R. § 395.8.

**4.** The penalty pay claims were subsequently dismissed.

**5.** AS 23.10.110(c). The 1995 amendments to AS 23.10.110 became effective August 25, 1995. Among other changes, these amendments added subsections (e)-(h), which relate to awards of attorney's fees. These amendments apply to "wages earned on or after the effective date of the Act." Committee Substitute for House Bill (C.S.H.B.) 115, 19th Leg. 1st Sess § 4(c) (1995). Thus, in order for former AS 23.10.110(c) to apply, the employee's claims must relate to work performed before August 25, 1995. Schorr and Gillum's wage claims are based on hours allegedly worked prior to August 25, 1995. Therefore, the former statute is controlling.

The current version of AWHA provides in AS 23.10.110(f) that

## III. DISCUSSION

**A.** *May a Defendant in an Action to Recover Wages under the AWHA Be Awarded Attorney's Fees Pursuant to Civil Rule 82?*

The version of the AWHA applicable to the wage claims advanced by Schorr and Gillum provided in relevant part:

> The court in an action brought under this section shall, in addition to a judgment awarded to the plaintiff, allow costs of the action and reasonable attorney fees to be paid by the defendant.[5]

Resolution of the question whether a prevailing defendant in an action to recover wages under the AWHA can be awarded attorney's fees pursuant to Civil Rule 82 is controlled by our decision in *Grimes v. Kinney Shoe Corp.*, 938 P.2d 997 (Alaska 1997). In that case Kinney argued that given the absence of any statutory authority to the contrary, Civil Rule 82 provides for a partial award of attorney's fees to a prevailing defendant in AWHA litigation. On the other hand, Grimes contended that Civil Rule 82 did not apply to prevailing defendants under the AWHA prior to its amendment in 1995.

Relying on the policies expressed in *Whaley v. Alaska Workers' Compensation Board*, 648 P.2d 955 (Alaska 1982),[6] as well as the comprehensive nature of the AWHA scheme ("that plainly allows only plaintiffs to recover

[i]f the defendant prevails in an action for unpaid overtime compensation under (a) of this section and had previously made an offer of judgment to the plaintiff, the court shall award attorney fees to the defendant unless the plaintiff proves to the satisfaction of the court that the action was both brought and prosecuted in good faith and that the plaintiff had reasonable grounds for believing that the act or omission was in violation of AS 23.10.060.

**6.** In *Whaley* we held that an award of attorney's fees against an employee in the context of a workers' compensation appeal was improper absent a showing that the appeal was "frivolous, unreasonable, or brought in bad faith." *Whaley*, 648 P.2d at 960. We further emphasized that awards of attorney's fees would undermine the purposes of our Workers' Compensation Act and severely limit a claimant's ability to seek appellate relief. *Id.* at 959–60.

their costs and attorney's fee"), we held in *Grimes:*

> It is the function of this court to interpret AS 23.10.110(c)—not to balance the statute and Civil Rule 82. Based on analogous case law and the plain language of AS 23.10.110(c), we hold that a prevailing defendant in an AWHA action to recover wages is not entitled to an award of attorney's fees and costs under former AS 23.10.110(c), nor is the prevailing defendant entitled to an award of attorney's fees under Civil Rule 82.

*Grimes,* 938 P.2d at 1001

Therefore, assuming Frontier were to retain its status as prevailing party, we hold that in this action to recover wages under the AWHA, it is not entitled to an award of attorney's fees under either former AS 23.10.110(c) or Civil Rule 82. Nevertheless, since we conclude, as discussed below, that the superior court erred in granting summary judgment to Frontier, it follows that its award of attorney's fees and costs to Frontier must be vacated.

B. *Did the Superior Court Err in Granting Frontier's Two Motions for Partial Summary Judgment and Entering Final Judgment against Schorr and Gillum on Their Overtime Wages Claims under the AWHA?*

The AWHA governs payment of overtime compensation to employees, requiring that an employer pay an employee at a rate of pay for all hours worked in excess of eight in a working day and forty in a workweek. AS 23.10.060–.180. Alaska Statute 23.10.060(d)(15) makes the normal AWHA overtime provisions inapplicable to line haul drivers when the employer's compensation system includes overtime pay for work in excess of forty hours a week or eight hours in one day.[7]

In its first motion for partial summary judgment, Frontier successfully argued to the superior court that its system of compensating line haul or long haul drivers complied with the relevant statutory terms of AS 23.10.060(d)(15).[8] In determining that the requirements for exemption from the AWHA were met, the superior court stated:

> Plaintiffs raise as a genuine issue of material fact the allegation that the formula authorized in lieu of the usual overtime scheme is a sham, and that their own certified and uncertified work records were completed by themselves falsely as directed by the employer.

> As to the former, the court finds no merit to this argument. The formula meets the standards of the statute.

> As to the question of whether the plaintiffs were fabricating their driving logs at the direction of the employer, this court

7. AS 23.10.060(d)(15) provides the following exemption from the overtime requirements of the AWHA:

> [A]n individual employed as a line haul truck driver for a trip that exceeds 100 road miles one way if the compensation system under which the truck driver is paid includes overtime pay for work in excess of 40 hours a week or for more than eight hours a day and the compensation system requires a rate of pay comparable to the rate of pay required by this section[.]

The rationale for this exemption is as follows:

> Unlike typical production employees whose hours may be easily tracked by punching in and out on a time clock, long-haul truck drivers perform their job duties away from their employer's place of business, often in remote locations and away from the direct supervision of the employer. Traditionally, trucking industry management has left the decision on how long to drive a truck up to the driver, provided the driver stays within the federal regulations governing hours of service. Some drivers choose to make a trip without stopping, if they can do so within the confines of the federal regulations, while others prefer to stop regularly and eat, relax, or sleep. Because of the peculiarities of long-haul truck driving, measuring job productivity by the hour is impossible. Accordingly, long-haul truck drivers have traditionally been paid on a mileage rather than an hourly basis.

(Footnotes omitted.) *See* Line Haul Truck Driving Exemption from Overtime Wage Requirements: Hearings on SB 506 before Senate Labor and Commerce Committee, 16th Legis., 2d Sess. (March 7, 1990), and before House Transportation Committee, 16th Legis., 2d Sess. (April 5, 1990).

8. AS 23.10.060(d)(16) was enacted in September 1990. In 1996, AS 23.10.060(d) was renumbered and subsection (16) became subsection (15). The 1996 revision did not otherwise change the subsection. For simplicity, we will refer to former AS 23.10.060(16) as AS 23.10.060(15).

finds there is insufficient credible evidence to support such a conclusion. Changed factual statements from a witness raised for the purpose of defeating a summary judgment [sic] are generally not allowed. Furthermore, public policy strongly weighs records kept as required by law and certified pursuant to that same law. Self serving later revisions should be given little weight.

The superior court thus granted Frontier's motion for summary judgment on those overtime claims arising after September 1990.

Frontier's second motion for partial summary judgment concerned wages paid prior to enactment of AS 23.10.060(d)(15). Frontier claimed that because the court had already decided that its compensation system after September 1990 included overtime compensation, the payment system prior to enactment must necessarily have included payment of overtime as well, since the system itself remained the same for all times relevant to this case. The superior court agreed, dismissing the overtime claims for the period between May 18, 1990, and September 18, 1990. Final judgment against Schorr and Gillum was entered accordingly.

The essence of Schorr and Gillum's appeal is that the superior court erred in concluding that the requirements of the AWHA line haul exemption were satisfied by Frontier's compensation system. The basic issue to be determined here is whether Schorr and Gillum raised a genuine issue of material fact as to whether the mileage formula properly calculated overtime pay.[9] Frontier's mileage formula purported to include compensation for both straight time and overtime. Once the number of hours required for a particular trip was determined, those hours were broken down into straight time for the first eight hours of duty, and overtime for all hours in excess of the first eight. The straight time hours were then multiplied by the regular hourly rate of pay and the overtime hours were multiplied by the overtime rate of one-and-one-half times that rate.

Frontier asserts that its

mileage compensation system paid Schorr and Gillum overtime comparable to what they would have received under a traditional hourly overtime arrangement, and in some instances even more, because all hours over eight in a trip were automatically paid at the overtime rate even if the hours in excess of eight were not worked in the same 24 hour workday.

Schorr and Gillum assert that Frontier's mileage rate formula was based on implausible driving times. They contend that Frontier's initial determinations of the number of hours required to complete a trip were mistakenly low, and that the resulting formula consequently undercompensated overtime hours.

Frontier's response is straightforward:

The admissible evidence presented to the trial court clearly established that not only can the trips be completed in the time allowed by Frontier's formula, but Schorr

---

**9.** According to Frontier, the mileage rate paid to long haul truck drivers (including Schorr and Gillum) was determined by the following methodology:

The computation started with an hourly rate. That hourly rate was then multiplied by the number of hours required to drive the trip. Added to this figure was a specific number of hours for miscellaneous job duties or "hostling" that may have to be performed in addition to driving. These "hostling hours" were intended to allow for duties such as hook-ups, fueling, tying down, chaining and unchaining, pre-trip and in-transit checks, breakdowns, tire repair, off-loading (if necessary), completing paper work, and any other job-related tasks associated with the trip. The number of hours allotted for these miscellaneous jobs varied according to the trip.

After the total number of hours for the trip was determined, including driving time and hostling, those hours were broken down into straight time hours and overtime hours. The first eight hours were compensated at a straight time hourly rate and any hours over the initial eight hours were paid at an overtime rate of one and one-half times that rate.

Once the total compensation due for the trip was determined, it was divided by the number of miles in the trip to arrive at a mileage rate for the trip. Frontier's long-haul truck drivers were then compensated at that rate. Mileage rates varied, depending upon such factors as the type of vehicle driven, the geographic duration of the trip, and the weight of the load. (Footnotes omitted.)

and Gillum's own driving logs[10] reveal the trips were uniformly completed by appellants in *less* than the time specified in the Frontier mileage rate.

Schorr and Gillum seem to admit that Frontier's formula would properly compensate the drivers if trip times were as reported in the log books,[11] but assert that the log books upon which the formula was based were themselves inaccurate. Moreover, Schorr and Gillum contend that Frontier in fact *"required* inaccurate recordkeeping."

The superior court held that there was insufficient evidence to support the conclusion that Schorr and Gillum fabricated their log books at the direction of Frontier. Disclaiming any knowledge of the drivers' alleged fabrications, Frontier asserts:

> [It] was not at all aware that Schorr and Gillum required unreported time in which to complete their duties. Frontier was well aware that the industry standard for a line-haul trip from Anchorage to Fairbanks and back was fourteen hours, with some time for non-driving activities. If Schorr and Gillum did underreport hours, Frontier relied to its detriment upon Schorr and Gillum's representations. Moreover, if they did knowingly and falsely under-report hours worked, Schorr and Gillum come to this court with unclean hands.

> . . . .

In light of the admissions and certifications contained in Schorr and Gillum's driver logs, there was no genuine issue of material fact regarding appellants' reported hours. Their own documentary admissions were sufficient grounds for granting appellee's motion for partial summary judgment.

(Footnotes omitted.)

Federal courts have held that an employee may be estopped from making a claim for overtime where the employee has deliberately misled the employer by inaccurately reporting the hours he has worked. *See Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir.1995); *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981). However, the federal courts have added a caveat to this rule: "An employee would *not* be estopped from claiming additional overtime if '[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate.'" *Newton,* 47 F.3d at 749 (emphasis added) (quoting *Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir.1972)).[12]

If Frontier knew that the drivers' logs were inaccurate, the logs should not be used as the basis for summary judgment against Schorr and Gillum. If Frontier knew that the long-haul trips could not possibly have been completed in the time allotted by its formula, the fact that Gillum and Schorr

**10.** Federal law required Schorr and Gillum to complete driver logs for each of their trips. These logs consisted of a detailed grid on which each fifteen-minute period of a twenty-four hour day was accounted for. Entering false or inaccurate information in the log subjected Schorr and Gillum to criminal prosecution. 49 C.F.R. § 395.8.

**11.** The superior court explicitly determined that "the formula meets the standards of the statute" in granting Frontier's motion for summary judgment.

**12.** *See Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981) ("[A]n employer who knows or should have known that an employee is or was working overtime [is obligated to pay overtime]. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime

compensation."); *Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274, 278 (E.D.Va.1992); *Lindow v. United States,* 738 F.2d 1057, 1060–61 (9th Cir.1984).

In the case at bar, one former Frontier driver affirmed that "it was common knowledge that the drivers' log books were not accurate" and that "[i]n the event we were busy and out of hours, Frontier would routinely request that drivers take trips and not record them in the log books and not record local work time." Five witnesses, including Schorr and Gillum, affirmed that the log books upon which the formula was based were inaccurate, and that actual driving times were greater than indicated in the records. These witnesses, other than Schorr and Gillum, did not mention any knowledge or condonation on the part of Frontier of this practice of underreporting hours. In this regard both Schorr and Gillum affirmed, "The company knew our driver's log books were not accurate because McKenzie and Thompson told us not to keep our driver's log books accurate."

allegedly underreported their own driving times is indeed relevant and the logs themselves would thus not be dispositive. Put differently, if Gillum and Schorr are able to prove that Frontier knowingly based its formula on inaccurate driving times, the resulting formula could conceivably fail to come within the exemption provided for in AS 23.10.060(d)(15).[13]

Frontier admits as much in its briefs. Citing *Forrester*, 646 F.2d at 414, Frontier notes:

> The very essence of a claim for overtime is that the employer "suffered or permitted" the employee to work hours in excess of the statutory limitations. For purposes of overtime entitlement, the terms "suffer and permit" are synonymous with the employer's knowledge of the employee's overtime activities.

While it may generally be true that employee records serve as notice to an employer of compensable hours worked, in this case Schorr and Gillum are specifically asserting alternative bases for Frontier's knowledge that the driving times used for calculation of its formula were inaccurate. Thus, in our view, this case presents issues not typically involved when a court deciding a summary judgment motion disregards testimony which conflicts with prior documentary assertions.

We conclude that there is a genuine issue of material fact as to whether the driving times relied upon by Frontier in calculating driver compensation were inaccurate and, moreover, whether Frontier knew this to be the case despite driver logs to the contrary.

In short, we disagree with the superior court's determination that no genuine issue of material fact existed.[14] We therefore hold that the superior court's grant of summary judgment against Schorr and Gillum on their wage claims should be vacated.[15]

## IV. CONCLUSION

The superior court's award of summary judgment against Schorr and Gillum is REVERSED. The superior court's award of attorney's fees and costs against Schorr and Gillum is REVERSED. The case is REMANDED for further proceedings not inconsistent with this opinion.

---

13. As discussed, the first step of Frontier's compensation computation involved an estimate of the number of hours required to drive round trip. Frontier's brief does not explain specifically how it arrived at this figure. In any case, if the allotted time underrepresented the number of hours typically required for the trip, the resulting mileage rate would presumably undercompensate the drivers.

14. Specifically, in the context of a summary judgment award, where "[a]ll reasonable inferences of fact are drawn in favor of the non-moving party and against the moving party," *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1086 (Alaska 1989), we find troubling the superior court's statement that

[a]s to the question of whether the plaintiffs were fabricating their driving logs at the direction of the employer, this court finds there is insufficient credible evidence to support such a conclusion. Changed factual statements from a witness raised for the purpose of defeating a summary judgment [sic] are generally not allowed. Furthermore, public policy strongly weighs records [sic] kept as required by law and certified pursuant to that same law. Self serving later revisions should be given little weight.

15. Given this disposition, we find it unnecessary to address Gillum and Schorr's arguments regarding "wait time," "hostling time," and mandatory safety meetings, or their claims related to Frontier's record keeping.